UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DISTRICT

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 03 2014

JAMES N. HATTEN, Clerk
By: _____ Clerk
Deputy Clerk

Mustafa Shakur Khan El,
    Plaintiff,

v.

Michael L. Corbat (C.E.O CitiGroup, Inc.),
CitiGroup, Inc.,
Jane Fraser (C.E.O CitiMortgage, Inc.),
CitiMortgage, Inc.,
    Defendants.

CIVIL ACTION
FILE NO.

**1:14 - CV - 3527**



## COMPLAINT ON MORTGAGE FRAUD
## AFFIDAVIT OF FACT AND THEORY OF RECOVERY

## TRIAL BY JURY OF MY OWN PEERS IS DEMANDED

## JURISDICTION

This action containing complaints for declaratory relief and for damages, is brought against the Defendants to secure due process of law, equal protection and other rights, privileges and immunities guaranteed to Plaintiff by the Constitution / Treaty and laws of these United States Republic.

Jurisdiction of this court is invoked under The Zodiac Constitution ©AA222141 / Library of Congress, Washington, District of Columbia, Constitution / Treaty and laws of the United States Republic as follows:

1. Article III Section 2: Diversity.

## VENUE

Original Jurisdiction United States Supreme Court.

## PLAINTIFF

I, **Mustafa Shakur Khan El,** was born with the appellation Charles Benard Bolton. I have recently **corrected** my appellation from Charles Benard Bolton to **Mustafa Shakur Khan El,** which reflects more accurately my **Ancient Aboriginal Ancestry**.

I, **Mustafa Shakur Khan El,** am Authorized Representative for the lifeless piece of paper contract and corporate fiction person known in **all capital letters** as CHARLES BENARD BOLTON. The private foreign European municipal corporations known as "COOK COUNTY" within the "STATE OF ILLINOIS" and "THE UNITED STATES OF AMERICA", created in 1871, is responsible for creating the corporate fiction person known as CHARLES BENARD BOLTON. The Plaintiff was erroneously recorded at the time of his birth as a member/employee of said foreign European municipal corporations.

The corporate fiction person known as CHARLES BENARD BOLTON is a void ab initio, lifeless piece of paper contract and security instrument commonly known as a birth certificate along with all its derivatives; it does not accurately represent a natural flesh and blood **Ancient Aboriginal** human being with a **nationality** and therefore does not represent the Plaintiff. The lifeless piece of paper contract and corporate fiction person, CHARLES BENARD BOLTON, was imposed upon the Plaintiff at the time of his birth while unconscious and without his consent. I, **Mustafa Shakur Khan El**, refute all fraud, past and present, in relation to the corporate fiction person known as CHARLES BENARD BOLTON whether made unconsciously by my hand or by unauthorized hand of another.

As endorsed by the United Nations and our Honorable President Barack Hussein Obama, Article 15 of the Universal Declaration of Human Rights states that "Everyone has the right to a nationality" and "no one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality". All corporations and their creations are by definition under the authority of a state or nation. The nation under which the aforementioned corporations exist and are governed is America.

*"American: n. an Aboriginal or one of the various copper-colored natives found on the American Continent by the Europeans; the original application of the name". — Websters 1828 American Dictionary of the English language and 1936. Websters unabridged 20th century dictionary*

I, **Mustafa Shakur Khan El**, Natural Person, In Propria Persona Sui Juris (not to be confused with, nor substituted by, Pro Se by unauthorized hand of another). I am Aboriginal Indigenous Moorish-American; possessing Free-hold by Inheritance and Primogeniture Status; standing Squarely Affirmed, aligned and bound to the Zodiac Constitution, with all due respect and honors given to the Constitution for the United States Republic, North America; Being a descendant of Moroccans and born in America; with the blood of the Ancient Moabites from the Land of Moab, who received permission from the Pharaohs of Egypt to settle and inhabit North-West Africa / North Gate. The Moors are the founders and are the true possessors of the present Moroccan Empire; with our Canaanite, Hittite and Amorite brethren, who sojourned from the land of Canaan, seeking new homes. Our dominion and inhabitation extended from Northeast and Southwest Africa, across the Great Atlantis, even unto the present North, South and Central America and the Adjoining Islands - bound squarely affirmed to THE TREATY OF PEACE AND FRIENDSHIP OF SEVENTEEN HUNDRED AND EIGHTY-SEVEN (1787) A.D. superseded by THE TREATY OF PEACE AND FRIENDSHIP OF EIGHTTEEN HUNDRED and THIRTY-SIX (1836) A.D. between Morocco and the United States, the same as displayed under Treaty Law, Obligations, Authority, as expressed in Article VI of the Constitution for the United States of America (Republic):

## THE TREATY OF PEACE AND FRIENDSHIP OF 1836 A.D.
### Between Morocco and the United States

### Article 20

"If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties, and whenever the Consul shall require any Aid or Assistance from our Government, to enforce his decisions, it shall be immediately granted to him."

### Article 21

"If any Citizen of the United States should kill or wound a **Moor**, or, on the contrary, if a **Moor** shall kill or wound a Citizen of the United States, the Law of the Country shall take place, and equal Justice shall be rendered, the Consul assisting at the Trial; and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever."

### DEFENDANTS

**Defendants**, Michael L. Corbat is profiting C.E.O of CitiGroup which is a corporation organized and existing under the laws of the State of Delaware. Jane Fraser is profiting C.E.O of CitiMortgage which is a corporation organized and existing under the laws of the State of New York that is a direct subsidiary of Citibank; Citibank is an entity chartered under the National Bank Act that is an indirect subsidiary of CitiGroup. Defendants are within the jurisdiction of this court.

## WITNESSES

Gary M. Goldsmith is a notary and alleged eyewitness. Jackson Hardwick and associates is also an alleged eyewitness. **Witnesses** Michael Taylor, Sesalee M. Woods, Jacob Brown and Omar Pacheco are profiting Representatives, employed by the Defendants. Additional witnesses may be necessary.

## INTRODUCTION

COMES NOW, Mustafa Shakur Khan El ex rel. CHARLES BENARD BOLTON, In Propria Persona Sui Juris (not to be confused with, nor substituted by, Pro Se by unauthorized hand of another), Plaintiff in the above-referenced action, and files this Affidavit of Fact as to Which There Exists no Genuine Issue to be Tried and Theory of Recovery, respectfully showing this Court as follows:

## BACKGROUND

1.

The Plaintiff is owner of the land and property located at his National Domicile and Ancestral Estate of Northwest Africa, North America, Northwest Amexem, erroneously referred to as 7307 Richland Court, Roswell, GA 30076, Fulton County.

2.

On August 11th, 2014, Plaintiff sent the Defendants, via FEDEX, an Affidavit of Fact – Notice of Breach of Contract. The notice was regarding

CitiMortgage account number 2001071257 and the Defendants failure to honor and uphold contractual obligations. The notice specified the Cause of Breach, the time frame for providing a response and how the matter can be cured without the use of a jury trial or the Supreme Court. The Defendants neglected to provide a proper response and cure within the given time frame for the Affidavit of Fact – Notice of Breach of Contract. (See, Exhibit A)

3.

On August 19th, 2014, Plaintiff sent the Defendants, via Certified mail, an Affidavit of Fact – Notice of Fraud. The notice was regarding CitiMortgage account number 2001071257 and the Defendants multiple Unfair and Unlawful Deceptive Practices in Consumer Transactions. The notice specified how the Defendants have engaged in multiple counts of Mortgage Fraud, the time frame for providing a response and how the matter can be cured without the use of a jury trial or the Supreme Court. Once again the Defendants neglected to provide a proper response and cure within the given time frame for the Affidavit of Fact – Notice of Fraud. (See, Exhibit B)

4.

On August 26th, 2014, Plaintiff sent the Defendants, via Certified mail, a Writ in the Nature of Request Discovery and Disclosure. The Writ demanded that the Defendants uphold their obligation and disclose all Lawful evidence regarding their claim placed on the Plaintiffs' property and a debt being owed in association with CitiMortgage account number 2001071257. Since it became clear that the Defendants were engaging in Mortgage Fraud and also induced the Plaintiff to participate in Mortgage Fraud, the Request was sent immediately after the Notice of Fraud. The Writ specified the time frame for providing a response and the

resulting Forfeiture of all claims regarding the Plaintiffs' property due to said failure of response. Once again the Defendants neglected to provide a proper response and cure within the given time frame for the Writ in the Nature of Request Discovery and Disclosure. (See, Exhibit C)

5.

On September 2nd, 2014, Plaintiff sent to the Defendants, via Certified mail, an Affidavit of Fact – Notice of Default. The notice was regarding CitiMortgage account number 2001071257 and the Defendants failure to respond to all Affidavits and Qualified Written Requests. The notice specified the time frame for providing a response and the resulting Forfeiture of all claims in regards to the Plaintiffs' property due to said failure of response. Once again the Defendants neglected to provide a proper response and cure within the given time frame for the Affidavit of Fact – Notice of Default. (See, Exhibit D)

## FACTS

6.

In November of 2003, the Defendants' drafted a mortgage loan contract in the name of CHARLES S. BOLTON. The mortgage loan contract states that "CitiMortgage" is the Lender providing said loan to CHARLES S. BOLTON. The Defendants' allegedly neglected to confirm, after drafting said mortgage loan contract, that the name within the mortgage loan contract matched the name of the rightful property owner, which is CHARLES B. BOLTON, as recorded in the Fulton County, State of Georgia public record. (See, Exhibit E)

7.

After the Defendants' allegedly <u>neglected</u> to confirm that the name within the mortgage loan contract matched with the name of the rightful property owner, the Defendants <u>conspired</u> with the law office of Jackson Hardwick and associates and notary Gary M. Goldsmith, to assist in recording the mortgage loan contract containing the name CHARLES S. BOLTON.

8.

On November 3rd, 2003, the Defendants <u>conspired</u> with the law office of Jackson Hardwick and associates and presented said mortgage loan contract to the Plaintiff. **Before allegedly signing the confusing multiple page mortgage loan contract**, the Plaintiff provided identification in the form of a State of Georgia Driver's License. The State of Georgia Driver's License has always contained the full name of the rightful property owner as also recorded in the Fulton County, State of Georgia public record, which is CHARLES B. BOLTON. The law office of Jackson Hardwick and associates made a copy of the State of Georgia Driver's License using an on-site copy machine. (<u>See</u>, Exhibit F)

9.

The law office of Jackson Hardwick and associates also allegedly <u>neglected</u> to confirm that the name within the mortgage loan contract matched with the name in the State of Georgia Driver's License and the name of the rightful property owner as recorded in the Fulton County, State of Georgia public record. Instead the law office of Jackson Hardwick and associates <u>deceived</u> the Plaintiff into believing that the mortgage loan contract will be corrected, per the clause written in the mortgage loan contract in section four titled "**Agreement to Correct Errors and Omissions on Loan Documentation…**" which clearly states "**In consideration of Lender making this loan to me, I hereby grant Lender limited power of**

**attorney to correct any errors..., by signing or initializing the correction on my/our behalf...**". (See, Exhibit G)

10.

At some unknown and unspecified date and time, Gary M. Goldsmith made the mortgage loan contract officially **VOID**, by performing the Dishonorable and Disqualifying act of notarizing said mortgage loan contract, associated with the Plaintiffs' property, while not knowing the Plaintiff personally or confirming the Plaintiffs' identity. O.C.G.A § 45-17-8 (e) clearly states, *"In performing any notarial act, a notary public shall confirm the identity of the document signer, oath taker, or affirmant based on personal knowledge or on satisfactory evidence"*.

11.

After Gary M. Goldsmith notarized the **void by misrepresentation** mortgage loan contract, the Defendants recorded said mortgage loan contract, **without the Plaintiffs' permission**, in the Fulton County, State of Georgia public record. This premeditated act performed by the Defendants created an **invisible ball and chain** around the Plaintiffs' ankles. The Plaintiff would have had to seriously injure himself through foreclosure or short sale in order to be freed from peonage, forced labor and involuntary servitude; due to the substantial monthly financial obligation created by the Defendants in the name of CitiMortgage.

12.

Do the Defendants really expect for the Plaintiff, Jury and this Court to believe that prior to recording said mortgage loan contract, in the Fulton County State of Georgia public record, that not one out of the three parties noticed the name discrepancy? Why did no one attempt to correct the document at the time of alleged signing? Prior to drafting said mortgage loan contract, what evidence or

method of search was used in order to determine the name of the rightful property owner on public record? Did the Defendants also disburse the mortgage loan contract funding in the name of CHARLES S. BOLTON? Will Gary M. Goldsmith testify, **under penalty of perjury**, that he witnessed the document signing? Did the Plaintiff sign the document that was recorded in the Fulton County State of Georgia public record? Is the system so broken that anyone can walk off the street and take out a loan and security deed against another man's property using a name other than the rightful property owner on public record? Will the Defendants be held responsible for creating and recording a void and fraudulent mortgage loan contract in the Fulton County, State of Georgia public record?

13.

**Mortgage Fraud is defined** in O.C.G.A § 16-8-102 and it clearly states that "*A person commits the offense of residential mortgage fraud when... such person... Files or causes to be filed with the official registrar of deeds of any county of this state any document such person knows to contain a **deliberate** misstatement, **misrepresentation**, or **omission**.* " The Georgia **RICO** statute O.C.G.A §16-14-2 which is in harmony with Title 18 USC §1962, includes residential **Mortgage Fraud** within the definition of racketeering activity. A violation of the Georgia RICO statute is a felony punishable by fine! **In addition to one count of Mortgage Fraud and RICO**, as described in between sections six (6) through twelve (12), **it will also be proven** that the Defendants have violated Title 18 USC § 1349, § 1581, § 1584, § 1589, § 1962 and § 2381.

14.

In January of 2008, the Defendants mailed the Plaintiff a loan modification contract as a remedy to avoid a potential foreclosure sale. Unlike the initial void

and fraudulent mortgage loan contract mentioned in between sections six (6) through twelve (12) above, the loan modification contract omitted the name CHARLES S. BOLTON from the signature page. (See, Exhibit H)

15.

In July of 2011, the Defendants mailed the Plaintiff another loan modification contract as a remedy to avoid another potential foreclosure sale. Again, unlike the initial void and fraudulent mortgage loan contract mentioned in between sections six (6) through twelve (12) above, the loan modification contract also omitted the name CHARLES S. BOLTON from the signature page. (See, Exhibit I)

16.

In addition to mailing the above mentioned forms of **extortion** (loan modification contracts), the Defendants also mailed the Plaintiff threats of **injury** (foreclosure notices). The Defendants recorded said, **void by omission**, loan modification contracts in the Fulton County, State of Georgia public record. These premeditated acts performed by the Defendants **helped to maintain** the invisible ball and chain around the Plaintiffs' ankles. The Plaintiff would have had to seriously injure himself through foreclosure or short sale in order to be freed from peonage, forced labor and involuntary servitude; due to the substantial monthly financial obligation created by the Defendants in the name of CitiMortgage.

17.

Once again the Defendants committed **Mortgage Fraud as defined** in O.C.G.A §16-8-102, which clearly states "*A person commits the offense of residential mortgage fraud when... such person... Files or causes to be filed with*

the official registrar of deeds of any county of this state *any document* such person knows to contain a ***deliberate*** misstatement, *misrepresentation, or **omission**.*" The Georgia **RICO** statute O.C.G.A §16-14-2 which is in harmony with Title 18 USC §1962, includes residential **Mortgage Fraud** within the definition of racketeering activity. Again, violation of the Georgia RICO statute is a felony punishable by fine! **In addition to the second count of Mortgage Fraud and RICO**, it **will be proven** that the Defendants have made **additional** violations, as described within sections fourteen (14) through sixteen (16), of Title 18 USC § 876, § 880, § 1341, § 1342, § 1349, § 1581, § 1584, § 1589, § 1962 and § 2381.

### 18.

The Witness, CitiMortgage Representative Michael Taylor, sent through wire (email) correspondence to the Plaintiff on March 25th, 2014, stating that the Plaintiff was eligible to receive loan modification assistance from the Government entity known as FHA/HUD. The Defendants followed up the email, from CitiMortgage Representative Michael Taylor, with a loan modification award letter, mailed on April 2nd, 2014. The award letter promised that after the payment trial period was complete, the Defendants would provide the Plaintiff with an FHA Home Affordable Loan Modification Contract. Again, unlike the **initial** void and fraudulent mortgage loan contract mentioned earlier, the modification award letter omitted the name CHARLES S. BOLTON from the signature page. (See, Exhibit J)

### 19.

The Defendants later mailed the Plaintiff a counterfeit loan modification contract from the private foreign entity known as CitiMortgage, on July 7th, 2014. All the details in the counterfeit modification agreement mirrored the details in the

FHA Home Affordable Loan Modification award letter <u>mailed</u>, April 2nd, 2014. However, the Defendants did not keep their promise and provide the Plaintiff with an FHA/HUD Home Affordable Loan Modification Contract. Instead, in an effort to further their scheme, the Defendants <u>mailed</u> a counterfeit loan modification contract, identical in detail and substance, in an attempt to impersonate the Government entity known as FHA/HUD. (<u>See</u>, Exhibit K)

20.

The Defendants became **exposed** when it was discovered that the counterfeit loan modification contract **boldly added** the name CHARLES S. BOLTON back on the signature page. In an effort to further their scheme, the Witnesses, CitiMortgage Representative Sesalee M. Woods and CitiMortgage Representative Jacob Brown, insisted multiple times, on behalf of the Defendants, that the Plaintiff <u>consciously</u> sign and notarize said counterfeit loan modification contract, containing the confusing name, CHARLES S. BOLTON. After the Plaintiff refused to proceed, CitiMortgage Representative Jacob Brown stated during a live phone conversation held on July 9th, 2014 the following "Our legal department will **NOT** make any changes to the contract" and advised the Plaintiff to "Get an attorney!" (<u>See</u>, Exhibit L)

21.

The Witnesses, CitiMortgage Representative Sesalee M. Woods and CitiMortgage Representative Jacob Brown, on behalf of the Defendants, attempted to induce the Plaintiff to consciously commit Mortgage fraud over <u>wire</u> (phone and email). However the Plaintiff declined all requests from said Witnesses to participate in the fraud. The Plaintiff declined to sign the counterfeit loan modification contract originating from the private foreign entity known as

CitiMortgage. Instead, a letter declining the "offer" to commit Mortgage fraud was emailed to the Witnesses and Defendants. (See, Exhibit M)

22.

Once again the Defendants made an **attempt** to commit **Mortgage Fraud as defined** in O.C.G.A § 16-8-102, which clearly states "*A person commits the offense of residential mortgage fraud when... such person... Files or causes to be filed with the official registrar of deeds of any county of this state any document such person knows to contain a **deliberate** misstatement, misrepresentation, or omission.*" The Georgia **RICO** statute O.C.G.A § 16-14-2 which is in harmony with Title 18 USC § 1962, includes residential **Mortgage Fraud** within the definition of racketeering activity. Again, violation of the Georgia RICO statute is a felony punishable by fine! **In addition to one count of underlined attempted Mortgage Fraud and RICO, it will also be proven** that the Defendants have made **additional** violations, as described within sections eighteen (18) through twenty-one (21) above, of Title 18 USC § 876, § 880, § 912, § 1341, § 1342, § 1349, § 1581, § 1584, § 1589, § 1962 and § 2381.

## CONCLUSION

23.

The Plaintiff and the Defendants have arrived at a point where no new business, contracts or modifications can be considered until the following first steps have been completed:

1. All void by misrepresentation and omission contracts have been discharged and expunged from the public record.

2. Return of all (already) lost, misgiven, misappropriated and generally wrongfully forwarded monies, currencies, finances and other Rights

and Properties (all and any) which have been, by deception or other misrepresented means, transferred from myself to CitiMortgage and its Representatives or Assigns. Including interest at the rate of 10% per annum.

24.

The Defendants have defrauded the Plaintiff of hundreds of thousands of Federal Reserve notes and credits by:

1. Pretending a valid contract existed between Plaintiff and the Defendants.
2. Pretending to have loaned the Plaintiff money of which the Defendants have not been able to produce lawful Chain of Title evidence or proof in connection with alleged loan.
3. Pretending and intending on exercising the authority to Foreclose on the Plaintiffs' property when no valid claim ever existed.

*"A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm,*

*but to disaffirm, the unlawful contract." (See, Pullman's Car Co. v. Central Transp. Co. 171 U. S. 138, 151, 43 L. ed. 108, 114, 18 Sup. Ct. Rep. 808)*

25.

This will not be the first time the Defendants have been found guilty of fraud and racketeering. It is well noted that as recent as 2012, the Defendants agreed to settle with the U.S. Government in the amount of $158 million due to fraudulent activities. The case brought to light the fact that the Defendants not only attempted to continuously defraud and injure their customers such as the Plaintiff, but their scheme also included the U.S. Government and FHA/HUD. Instead of offering a true FHA Home Affordable Loan Modification, which greatly benefits their customers such as the Plaintiff, their scheme was and has always been to offer plans that greatly benefit the Defendants. The Defendants knew by offering plans that consumed nearly half of their customers monthly wages, their customers would always remain one late paycheck away from default. Afterwards the Defendants would file a FHA/HUD insurance claim and recover the defaulted amount. At the same time the Defendants would add the defaulted amount back into the loan modification contract as also seen in the subsequent modification contracts mentioned earlier in between sections fourteen (14) and sixteen (16); thus ultimately and effectively receiving payment two to three times for the same default. (See, U.S. ex rel. Hunt v. Citigroup Inc et al, U.S. District Court, Southern District of New York, No. 11-05473)

26.

The Defendants caused the Plaintiff great harm and injury by theft of time, life, mental health, physical health and wages for labor performed by the Plaintiff. The Defendants weakened the U.S. Government, U.S. Economy, FHA/HUD, the

people of the United States; while at the same time aiding, comforting and strengthening the private foreign entity known as CitiGroup. The Defendants knew that the counterfeit modification document was a fraud; they also knew that the initial void mortgage loan contract and subsequent loan modification contracts were a fraud as well. However the Defendants insisted on the Plaintiff unconsciously and later consciously participating in furthering their scheme to publicly record said colored agreements; and to injure the Plaintiff by continuously stealing finance, forcing peonage, involuntary servitude, labor and ultimately planning to steal the Plaintiffs' property via foreclosure as seen clearly from the Defendants past attempts.

## THEORY OF RECOVERY

### 27.

The Defendants' fraudulent acts and inability to produce lawful Chain of Title evidence showing a valid claim has indebted the Defendants to the Plaintiff in the principal amount of $182,280. Principal does not include interest, fines, legal document preparation cost and costs related to pain and suffering. In addition, Defendants owe interest in the amount of $167,356. (10% per annum) The legal document preparation costs the Plaintiff has incurred in this matter with the Defendants total $133,000 in research time and preparation costs. The Fines the Defendants have incurred in this matter with the Plaintiff are estimated to be $17,538,095.58. The pain and suffering costs the Plaintiff has incurred in this matter with the Defendants are incalculable; however the Plaintiff prays that the amount demanded of $181,979,268.42 from the Defendants, through this Court, to cover the loss of life, loss of health, loss of time, broken family relationships due to mailed threats of foreclosure, financial stress and medical related costs might begin to help start the healing process.

WHEREFORE, plaintiff demands an order against Defendants requiring the correction of all public records associated with the Plaintiffs' land and property; and judgment against Defendants for the sum total of $200,000,000.00. The Plaintiff is entitled to an award in Lawful Money of all amounts due under this Complaint on Mortgage Fraud.

*"The right to a recovery of the property transferred under an illegal contract is founded upon the implied promise to return or to make compensation for it." (See, Pullman's Car Co. v. Central Transp. Co. 171 U. S. 138, 151, 43 L. ed. 108, 114, 18 Sup. Ct. Rep. 808)*

[ SIGNATURE ON NEXT PAGE ]

I declare under the penalty of perjury under the law of the UNITED STATES CODES that the above is true and correct to the best of my knowledge and honorable intent.

This 3rd day of November, 2014.

**Respectfully submitted,**

I Am: *Mustafa Shakur Khan El*                    .
Mustafa Shakur Khan El, Divine Being,
In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by
Fraudulent Construct of ALL CAPITAL LETTERS
All Rights Reserved.
[c/o 7307 Richland Court]
[Roswell Territory]
[Georgia Republic]
[Zip Exempt]
Non-Domestic / Non-Subject / Non-Resident /
Non-Corporate

# EXHIBIT A

  

## Moorish National Republic Federal Government
### Societas Republicae Ea Al Maurikanos
Northwest Amexem / Northwest Africa / North America / 'The North Gate'
The True Aboriginal and Indigenous Natural Peoples of the Land

## Affidavit of Fact
## Notice of Breach of Contract

This Notice Is Sent via FedEx tracking number: (8061 7537 7170 & 8061 7537 7169)
This Notice Is Sent via email: (host.citilinkdocs@citi.com)

**From**: M. S. Khan El, Authorized Representative
C/o 7307 Richland Court
Roswell Territory
Via Georgia Republic
Via United States Republic, North America
Non-Domestic, Non-Resident
Zip Exempt [30076]

**To:** Michael Corbat, Chief Executive Officer of CitiGroup, Inc.
399 Park Avenue
New York, NY 10022
FedEx Tracking Number: **8061 7537 7170**

**To:** Jane Fraser, Chief Executive Officer of CitiMortgage
399 Park Avenue
New York, NY 10022
FedEx Tracking Number: **8061 7537 7169**

### Re: Account Number - 2001071257

Dear Sir, Madam,

This notice of **Breach of Contract** is being sent to **alert** you regarding the **current status** of the agreement between CHARLES B. BOLTON and CitiMortgage (Alleged Lender). In February of 2014, according to CitiMortgage, through its Representatives or Assigns, CHARLES B. BOLTON was approved for the Government sponsored FHA HAMP program. In March of 2014, **documentation was sent to CHARLES B. BOLTON confirming that the account number 2001071257 was indeed reviewed and approved for the Government sponsored FHA HAMP program.** The terms of the Government sponsored program required that CHARLES B. BOLTON make three trial payments before **finalizing** the Government sponsored FHA HAMP program. **All three payments were made and on time.**

On 6/19/2014, **documents were prepared by CitiMortgage**, through its Representatives or Assigns, in order to finalize the Government sponsored FHA HAMP program. After receiving the Government sponsored FHA HAMP modification documents **eighteen (18) days later,**

# EXHIBIT A

delivered via UPS on 7/7/2014, it became clear that the time sensitive agreement contained multiple minor and major defects on the face of the record. In the following days, between 7/8/2014 through 7/11/2014, **Requests** to fix all minor and major defects in the Government sponsored FHA HAMP modification document were made and sent to CitiMortgage, through its Representatives or Assigns, Sesalee M. Woods and her manager Jacob Brown. **All requests to fix minor and major defects were denied which resulted in a BREACH of CONTRACT and incalculable damages.** CitiMortgage, through its Representatives or Assigns, insisted that I sign the Government sponsored FHA HAMP modification document even though **the document contained minor defects in grammar/syntax and major defects including false/fictitious names and/or identities.**

The **ORIGINAL** loan document, dated 11/3/2003, between CHARLES B. BOLTON and CitiMortgage (Alleged Lender) titled **"Agreement to Correct Errors and Omissions on Loan Documentation...",** clearly states **"In consideration of Lender making this loan to me, I hereby grant Lender limited power of attorney to correct any errors..., by signing or initializing the correction on my/our behalf...".**

As a result of all requests to correct minor and major defects being DENIED, I was forced to decline the Government sponsored FHA HAMP modification as seen in the letter dated 7/11/2014, sent via email per the request of CitiMortgage Representative Sesalee M. Woods. I made it very clear to both Sesalee and her manager Jacob that **I would not sign another agreement which contains grammar/syntax errors and false/fictitious names and/or identities.**

The **ORIGINAL** loan document, dated 11/3/2003, also contains the same **false/fictitious name and/or identity.** I was advised by the closing attorney on 11/3/2003, that the agreement between CHARLES B. BOLTON and CitiMortgage (Alleged Lender) includes a clause to correct all errors in the loan documents on my/our behalf. Since CitiMortgage, through its Representatives or Assigns, **Breached Contract** and never corrected this major defect, I insisted that the Government sponsored FHA HAMP modification document be corrected before signing and finalization. Again all requests were denied and I was forced to decline the Government sponsored FHA HAMP modification.

## AS OF 8/8/2014, THE DAMAGES AND FINES RESULTING FROM THIS BREACH OF CONTRACT ARE INCALCULABLE.

**In order to cure this Breach, I highly recommend CitiMortgage, through its Representatives or Assigns, immediately perform the following:**

1. **Remove from public record and DISCHARGE all agreements, contracts, loans, etc.**

2. **Reconvey all Real Property and/or Estate.**

# EXHIBIT A

3. **Return to Claimant all (already) lost, misgiven, misappropriated and generally wrongfully forwarded monies, currencies, finances and other Rights and Properties (all and any) which have been, by deception or other misrepresented means, transferred from myself to CitiMortgage and its Representatives or Assigns. Including interest (at the rate of 10% per annum), health related costs (Hospital, Doctor, Medicine, Relationships, Fear, Stress, Depression, and Anxiety related to threats of foreclosure), costs and expenses.**

If CitiMortgage determines, **after curing the Breach of Contract**, that there is a debt still owed, I am prepared to meet with CitiMortgage Representative(s) or its Assigns forthwith; to review **ALL Lawful Evidence and Proof** showing a debt still owed and will have diligently attentive **Consul / Council** and affirmed **Witnesses** present, **for the Public Record.**

**This notice of Breach of Contract requires your immediate response within five (5) days of Receipt of the same.** Any untoward or deceptive acts; misrepresentations; diversions; deceitful redirections; or any incomplete or non-answered Response to this notice of Breach of Contract presented to the Representatives, Holders or Trustees, etc., will be considered an affirmation of secrete, disguise, and disingenuous intent. Any avoidance of truth shall be considered an 'Inducement to Fraud'; and the said 'Failure of Response' on the part of the Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to answer this notice of Breach of Contract shall constitute a violation of Trust, a breach of Trust, and a tacit acquiescence, established for the record by non-compliance. **The same dispensations shall be published for the Public Record.**

**This Legal Notice to Principal is a Legal Notice to Agent; and this Legal Notice to Agent is a Legal Notice to Principal.**

**In Good Faith, Truth and Honor,**

I Am: _____ .

Mustafa Shakur Khan El, Divine Being, In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by Fraudulent Construct of
ALL CAPITAL LETTERS
All Rights Reserved.

cc:
Justice Sonia Sotomayor – The United States Supreme Court
Honorable Barack Obama – President of the United States
Honorable Eric Holder – United States Department of Justice
Secretary John Kerry – United States Department of State
The Supreme Court of Georgia
Governor Nathan Deal – Georgia State Governor
Attorney Sam Olens – Georgia Attorney General
Secretary Brian P. Kemp – Secretary for the State of Georgia
Creekside at Mansell – Home Owners Association

EXHIBIT B

  

## Moorish National Republic Federal Government
### Societas Republicae Ea Al Maurikanos
Northwest Amexem / Northwest Africa / North America / 'The North Gate'
The True Aboriginal and Indigenous Natural Peoples of the Land

# Affidavit of Fact
# Notice of Fraud

**This Notice Is Sent via United States Certified Mail:** (7013 3020 0000 3079 7398 & 7013 3020 0000 3079 7381)
**This Notice Is Sent via email: (host.citilinkdocs@citi.com)**

**From**: M. S. Khan El, Authorized Representative
C/o 7307 Richland Court
Roswell Territory
Via Georgia Republic
Via United States Republic, North America
Non-Domestic, Non-Resident
Zip Exempt [30076]

**To:** Michael Corbat, Chief Executive Officer of CitiGroup, Inc.
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: **7013 3020 0000 3079 7398**

**To:** Jane Fraser, Chief Executive Officer of CitiMortgage
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: **7013 3020 0000 3079 7381**

#### Re: Account Number - 2001071257

Dear Sir, Madam,

This notice of **Fraud** is being sent **along with copies of the notice of Breach of Contract already delivered on 8/11/2014**, to **alert** you regarding the **current status** of the agreement between CHARLES B. BOLTON and CitiMortgage (Alleged Lender). In July of 2001, CHARLES B. BOLTON purchased a home from Pulte Homes with a mortgage from the now defunct Sunshine Mortgage. "**Mortgage" from here on is referred to as "Promissory Note"**. CHARLES B. BOLTON **allegedly** took out a loan and signed a promissory note with Sunshine Mortgage in the amount of $178,477.00. **A promissory note is just like a car title, whoever owns the signed original promissory note is the true owner of the debt.**

Within a month Sunshine Mortgage **allegedly sold** the **signed original promissory note** to the now defunct Countrywide home loans. This **alleged** ACT by Sunshine Mortgage, made Countrywide the new **alleged** owner of the **signed original promissory note**. In September of 2001, CHARLES B. BOLTON began making **promissory note** payments to Countrywide home

1 of 5

loans. Since the **Fraud-ridden and disgraced Countrywide home loans** is no longer in business, we are unable to verify if they are or were indeed in possession of the **signed original promissory note. Whoever is in possession of the signed original promissory note is the true owner of the debt.**

In September of 2003, interest rates began to drop; CHARLES B. BOLTON requested and was approved for a lower interest rate home loan through CitiMortgage (Alleged Lender). In November of 2003, CitiMortgage, through its Representatives or Assigns, and CHARLES B. BOLTON closed on the **alleged** lower interest rate home loan. **Since CitiMortgage (Alleged Lender) never wrote a check or gave any LAWFUL money to CHARLES B. BOLTON, this ACT made CitiMortgage (Alleged Lender) RESPONSIBLE for securing the signed original promissory note/debt.** It remains to be seen whether or not CitiMortgage, through its Representatives or Assigns, **ACTED RESPONSIBLY and secured the signed original promissory note. Again whoever is in possession of the signed original promissory note is the true owner of the debt.**

Today, as of 8/18/2014, **mysteriously** CitiMortgage (Alleged Lender) is now represented and documented as **"Servicer"**. In the loan documents, dated 11/3/2003, between CHARLES B. BOLTON and **CitiMortgage (Alleged Lender), CitiMortgage is fraudulently represented and documented as "Lender", in an effort to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

Furthermore, during the closing on 11/3/2003, I informed the CitiMortgage Representative that the name on the loan document was not my name. The CitiMortgage Representative stated that there was a clause in the document to correct all errors in the loan document on my/our behalf. The CitiMortgage Representative showed me the clause in the document and asked that I sign the document and that the document would be fixed later. **I read the clause and signed the document not knowing the issue would never be fixed.** There was **no notary present to witness** the closing and confirm that the name and identity in the loan document was indeed CHARLES B. BOLTON. However, **at some unspecified date and time**, Gary M. Goldsmith signed and notarized the **fraudulent loan document** "as is" without being present and checking for identification; and before the necessary corrections were made to the loan document. **This was another effort on behalf of CitiMortgage, through its Representatives or Assigns, to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

In February of 2014, CitiMortgage Representative Michael Taylor, informed CHARLES B. BOLTON of being approved for the Government sponsored FHA HAMP program. In April of 2014, CitiMortgage, through its Representatives or Assigns, **mailed documentation to CHARLES B. BOLTON confirming that the account number 2001071257 was indeed reviewed and approved for the Government sponsored FHA HAMP program.** The document contained details on every step of the process needing to be fulfilled before finalizing

the program. The terms of the Government sponsored program required that CHARLES B. BOLTON make three trial payments before **finalizing** the Government sponsored FHA HAMP program. **All three payments were made and on time.**

After making the second to last payment, CitiMortgage Representative Michael Taylor was **mysteriously** removed from handling Account number 2001071257 and a **new** CitiMortgage Representative, Sesalee M. Woods was assigned. Throughout the entire month of May and mid June 2014, CitiMortgage Representative Sesalee M. Woods would state repeatedly that after the final trial payment was made, we would **need to wait on FHA for the final modification document**. On 6/19/2014, **documents were mysteriously prepared by CitiMortgage**, through its Representatives or Assigns, **instead of FHA** who is **alleged** to have sponsored the program. One can only assume that **this fraud might have been detected earlier** by CitiMortgage Representative Michael Taylor, had he not been **mysteriously** removed from processing the file.

The final modification document prepared by CitiMortgage, through its Representatives or Assigns, serves as proof and evidence that CitiMortgage, through its Representatives or Assigns, were **fraudulently impersonating a Government sponsored FHA HAMP program to their own benefit**. Since these **mysterious** documents came from CitiMortgage and not from the Government sponsored FHA HAMP program, it is clear for all to see that **this was another effort on behalf of CitiMortgage, through its Representatives or Assigns, to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

After receiving the CitiMortgage modification document **eighteen (18) days after being drafted**, delivered via UPS on 7/7/2014, it became clear that the time sensitive agreement contained **multiple minor and major defects** on the face of the record. CitiMortgage, through its Representatives or Assigns, did not advise that the Government sponsored FHA HAMP modification document was **mysteriously** switched for a CitiMortgage modification document and that **no documents were coming from FHA at all**. CitiMortgage, through its Representatives or Assigns, did however insist that I hurry and sign the CitiMortgage modification document, **in another effort to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

In the following days, between 7/8/2014 through 7/11/2014, **Requests** to fix all minor and major defects in the CitiMortgage modification document were made and sent to CitiMortgage Representative Sesalee M. Woods and her manager CitiMortgage Representative Jacob Brown. CitiMortgage, through its Representatives or Assigns, insisted that I sign the CitiMortgage modification document even though **the document contained minor defects in grammar/syntax and major defects including false/fictitious names and/or identities.** Here we see an **inducement to fraud** request on behalf of CitiMortgage, through its Representatives or Assigns, to have CHARLES B. BOLTON sign a document using a **false/fictitious name**

# EXHIBIT B

**and/or identity. This was another effort to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

I made it very clear to both CitiMortgage Representative Sesalee M. Woods and her manager CitiMortgage Representative Jacob Brown that **I would not sign another agreement which contains grammar/syntax errors and false/fictitious names and/or identities.** The **ORIGINAL** loan document, dated 11/3/2003, also contains the same **false/fictitious name and/or identity.** I was advised by the CitiMortgage Representative on 11/3/2003, that the agreement between CHARLES B. BOLTON and CitiMortgage (Alleged Lender) includes a clause to correct all errors in the loan documents on my/our behalf. **Therefore since CitiMortgage prepared the new modification document, there exists no good reason why CitiMortgage could not correct the false/fictitious name and/or identity.** Especially due to the now known fact that **CitiMortgage prepared the modification document and not FHA** as originally stated and documented by CitiMortgage, through its Representatives or Assigns. **This ACT by CitiMortgage, through its Representatives or Assigns, constituted a BREACH of CONTRACT and was another effort to DEFRAUD CHARLES B. BOLTON of Real Property, Estate and Finance.**

**AS OF 8/18/2014, THE DAMAGES AND FINES RESULTING FROM THIS BREACH OF CONTRACT AND FRAUD ARE INCALCULABLE.**

**In order to cure this Breach of Contract and FRAUD, I highly recommend CitiMortgage, through its Representatives or Assigns, immediately perform the following:**

1. **Remove from public record and DISCHARGE all agreements, contracts, loans, etc.**

2. **Reconvey all Real Property and/or Estate.**

3. **Return to Claimant all (already) lost, misgiven, misappropriated and generally wrongfully forwarded monies, currencies, finances and other Rights and Properties (all and any) which have been, by deception or other misrepresented means, transferred from myself to CitiMortgage and its Representatives or Assigns. Including interest (at the rate of 10% per annum), health related costs (Hospital, Doctor, Medicine, Relationships, Fear, Stress, Depression, and Anxiety related to threats of foreclosure), costs and expenses.**

If CitiMortgage determines, **after curing the Breach of Contract and FRAUD,** that there is a debt still owed, I am prepared to meet with CitiMortgage Representative(s) or its Assigns forthwith; to review **ALL Lawful Evidence and Proof** showing a debt still owed and will have diligently attentive **Consul / Council** and affirmed **Witnesses** present, **for the Public Record.**

# EXHIBIT B

**This notice of Fraud requires your immediate response within five (5) days of Receipt of the same.** Any untoward or deceptive acts; misrepresentations; diversions; deceitful redirections; or any incomplete or non-answered Response to this notice of Fraud presented to the Representatives, Holders or Trustees, etc., will be considered an affirmation of secrete, disguise, and disingenuous intent. Any avoidance of truth shall be considered an 'Inducement to Fraud'; and the said 'Failure of Response' on the part of the Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to answer this notice of Fraud shall constitute a violation of Trust, a breach of Trust, and a tacit acquiescence, established for the record by non-compliance. **The same dispensations shall be published for the Public Record.**

**This Legal Notice to Principal is a Legal Notice to Agent; and this Legal Notice to Agent is a Legal Notice to Principal.**

**In Good Faith, Truth and Honor,**

I Am:

Mustafa Shakuf Khan El, Divine Being, In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by Fraudulent Construct of
ALL CAPITAL LETTERS
All Rights Reserved.

cc:
High Commissioner Navi Pillay – United Nations, Human Rights Division, Geneva, Switzerland
Justice Sonia Sotomayor – The United States Supreme Court
Honorable Barack Obama – President of the United States
Honorable Eric Holder – United States Department of Justice
Secretary John Kerry – United States Department of State
The Supreme Court of Georgia
Governor Nathan Deal – Georgia State Governor
Attorney Sam Olens – Georgia Attorney General
Secretary Brian P. Kemp – Secretary for the State of Georgia
Creekside At Mansell – Home Owners Association

  

**Moorish National Republic Federal Government**
Societas Republicae Ea Al Maurikanos
Northwest Amexem / Northwest Africa / North America / 'The North Gate'
The True Aboriginal and Indigenous Natural Peoples of the Land

# Writ in the Nature of Request
# Discovery and Disclosure

Date: August 21, 2014

This Notice Is Sent via email: (host.citilinkdocs@citi.com)
This Notice Is Sent via United States Certified Mail: (7013 3020 0002 1727 5077 & 7013 3020 0002 1727 5060)

**From:** Mustafa Shakur Khan El, Authorized Representative
c/o 7307 Richland Court
Roswell Territory
Via Georgia Republic
Via United States Republic, North America
Non-Domestic, Non-Resident
Zip Exempt [30076]

**To:** Michael Corbat, Chief Executive Officer of CitiGroup, Inc.
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: 7013 3020 0002 1727 5077

**To:** Jane Fraser, Chief Executive Officer of CitiMortgage
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: 7013 3020 0002 1727 5060

## Re: Account Number - 2001071257

**Please mail or deliver to the Borrower**, Mustafa Shakur Khan El, the following pertinent Evidence: Produce the **Originals** or **Certified** and **Verified Official Copies** of the **Original Loan - Related Documents** *(including all related papers, electronic communications and E-Mails, etc.,)* as stipulated by Law. All of these Loan-related instruments adversely affect the Loan Number in controversy 2001071257. CitiMortgage by and through its Representatives or Assigns are **'Requested'** to schedule a timely and transparent **Meeting** establishing an opportunity for me, my **Consul**, and /or my **CPA** to make a thorough **Physical Inspection** of the **Loan – related Documents,** and all other related instruments, so as to enable the Borrower and his Consul, or CPA to physically Examine; to Verify; to Confirm; and to Witness the same instruments; and to Rebut any mistakes or misrepresentations; to compare our records, facts and information; and to correct the same for the Public Record.

**This Writ is a Lawful Demand and Request**, and is hereby issued under the **'Rules of Discovery'**, and forwarded to CitiMortgage and to its Representatives and / or its Assigns, according to Law and the **'Disclosure Rules'**. This **Request** is to give **Legal Notice** to the Representatives and Assigns of CitiMortgage, its Agency Personnel, and its Contractors; and to inform them to proceed and to do those things necessary to set and arrange for a timely 'Resolution Meeting' to close, to solve, to unravel, and to settle these matters. The alleged borrower will have affirming witnesses present. The requested Resolution Meeting shall be set and concluded to effectuate the above - stated **Physical Examinations** and **Witnessing** of the Requested **Documents;** and the delivery and presentment of the same shall be orderly arranged, satisfied and concluded within Five (5) Days of the Receipt of this **'Notice of Discovery and Disclosure'**.

CitiMortgage and its profiting Representatives or Assigns are also Requested, '**For The Record**' to produce the following **Records, Information** and **Documents** as initially noted and related to the alleged **Loan**, bearing the Account Number 2001071257; which are in controversy. The requested 'Discovery and Disclosure' is to include all inter-dependent, inter-related documents, and all associated Instruments attached thereto; covering all the associated Files and Notes and Instruments constructed from the initiation of the alleged Loan up and unto the present day; and reflecting all related and accumulated documents, notes, and data:

1.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to Disclose and to produce the '**Original Promissory Note**' being lawful, legible and verifiable proof of evidence (*exposing the front and the back*) and marked with the Account Number, 2001071257, with the clear signatures of the Lender(s) and all the evidence associated with the **Original Loan,** indicating the exchange of **Substance** or **Specie** alleged to have been issued from your CitiMortgage/Agency Representatives or Persons and given to the Borrower Mustafa Shakur Khan El.

2.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce any and all '**Allonge**' or Riders; any '**Bills of Exchange**'; and any other '**Promissory Note(s)**' *(exposing the front(s) and the back(s)* complete with any '**Affixations**' or '**Allocations**' attached to, or associated with, the Borrower's '**Original Promissory Note**' and used for '**Endorsements**'.

3.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce and disclose all **Bookkeeping Journal Entries** associated with the alleged **Loan** given to the Borrower Mustafa Shakur Khan El. Include all the complete names, the addresses, the locations, and the business contacts of all the acting Trustee(s), Feoffers and / or the affirmed Surety Holders.

4.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce, disclose and reveal the '**Deed of Trust**' associated with the **Original Loan** and to reveal and disclose all other Notes related in any other way to the Borrower Mustafa Shakur Khan El.

5.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce Evidence of the '**Insurance Policy**' that was constructed, associated with, or put in place on, or against, the Borrower's '**Promissory Note**' and associated with the **Loan** bearing the Account Number 2001071257.

6.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce all '**Call Reports**' and any other related '**Notes**' or instruments made or constructed for the entire period covering the **Loan**.

7.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce the documented evidence of the original '**Deposit Slip**' issued for the **Deposit** of the Borrower's '**Promissory Note**' and associated with the **Loan**.

8.      CitiMortgage, through its Representatives or Assigns, is hereby '**Requested**' to produce the '**Original Order**' authorizing the withdrawal of **Funds** from the Borrower's '**Promissory Note**' Deposit Account.

9.      CitiMortgage, through its Representatives or Assigns is hereby '**Requested**' to produce the '**Account Number**' and the Source from which the money came to '**Fund**' the original '**Check**' given to the '**Borrower**'.

10.     CitiMortgage, through its Representatives or Assigns is hereby '**Requested**' to produce 'Verification' evidence, and proof that the Borrower's '**Promissory Note**' was a '**Gift**' to the '**Lender**' from the **Borrower**; and that the same was disclosed to the Borrower Mustafa Shakur Khan El.

11.     CitiMortgage, through its Representatives or Assigns is hereby '**Requested**' to produce the full and complete '**Name(s)**' and the '**Address(s)**' of the current '**Holder(s)**' of the Borrower's '**Promissory Note**' associated with the alleged **Loan**.

**12.** CitiMortgage, through its Representatives or Assigns is hereby **'Requested'** to produce and disclose the full and complete **'Name(s)'** and the **'Address(s)'** of the **'Lender's CPA** and **'Auditor'**; or any other Holder or Record - Keeper for the entire period covering the **Execution** of the **Mortgage** or **Loan**.

This **Writ** shall stand as firm and **'Lawful Evidence'** of the **Borrower's** exercising his 'due process' rights to **Request, Discovery** and **Disclosure;** and establishes **'For The Record'** an honorable and **'Good Faith'** attempt on his part to clear up any flawed entries; any **insensate misrepresentations;** or any other mis-prints, mistakes, frauds, or **confusion** concerning his intent to make clear, unvarnished, and corrective **resolutions** in this **Loan** matter. This Request must be satisfied before accepting any vague assumptions; any other misrepresentations; any secondary contracts; and before the claimants taking any further actions.

I Mustafa Shakur Khan El am prepared to meet with CitiMortgage Representative(s), or its Assigns forthwith; and will have diligently attentive **Consul / Council** and affirmed **Witnesses** present, **for the Public Record.**

CitiMortgage and its Representative(s) or its Assigns have claimed to be a **'Secured Party-of-Interest'** in the alleged **'Loan Account'** Number 2001071257. Therefore the requisite, obligatory, documented and preserved pre-existing Records and Manifests are required by Law to have been confirmed and placed into 'Evidence' by identifiable and confirmable delegated Representatives and profiteers acting for CitiMortgage. Law and 'due process' require the requested, pre-existing evidence to be presented, examined and confirmed as true and correct in order for the claimants to lawfully initiate any court **'Actions'** regarding the alleged **'Loan Account'** Number 2001071257. Proof and Disclosure of all the Exhibits of that Oath - affirmed **'Evidence'** and filing is also hereby formally **'Requested'**.

Any failure or avoidance on the part of the Representatives / Assigns / Claimants to effectuate the forwarding of complete answers to this Request, and a failure of the Representatives or Assigns to **'Respond'** to this lawful **'Writ in the Nature of Request, Discovery and Disclosure'**; and the failure of any of them to responsibly and to fully answer all 12 of the clearly – specified, Loan – related Requests herein listed, will be considered an affirmation of fact and evidence that CitiMortgage and its Representative(s) or Assigns have no valid claim; have no lawful **'Interests'** in the Estate or property; and that the claimants have no lawful debt **'Claims'** or **'Title(s)'** of Ownership' in the alleged property, estate, or **Loan** matter at hand; nor do the claimants have standing in the said controversy.

CitiMortgage or its Representatives or Assigns are required to answer this **Writ / Request, Discovery and Disclosure** completely and to be thoroughly specific in answering the lawful questions and issues presented and arising in this controversy.

The Representatives, Trustees, Feoffers, or Assigns are to materially and expediently return this same Request, Discovery and Disclosure (*as presented*) and with all twelve (12) points or issues fully answered within the **allotted five (5) days** of **Receipt** of the same. Any untoward or deceptive acts; misrepresentations; diversions; deceitful redirections; or any incomplete or non-answered Response to the questions presented to the Representatives, Holders or Trustees, etc., will be considered an affirmation of secrete, disguise, and disingenuous intent. Any avoidance of truth shall be considered an 'Inducement to Fraud'; and the said 'Failure of Response' on the part of the Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to answer every one (*and all of the specific twelve (12) above – noted Loan – issues*) shall constitute a violation of Trust, a breach of Trust, and a tacit acquiescence, established for the record by non-compliance. The same dispensations shall be published for the Public Record.

Any willful **'Non-Disclosure'** and **Default**; in this matter shall be deemed a **Dishonor;** and thereby voiding all positions of trust. Any Allegations or Claims of Ownership or interest made by CitiMortgage or by its Representatives, trustees, Feoffers, Agents, Contractors, or Assigns, shall be held as Null and Void. The Affiant reserves all Rights of Claim; and the Affiant's Affidavit of Request and Discovery and Disclosure shall stand as Law.

**This Legal Notice to Principal is a Legal Notice to Agent; and this Legal Notice to Agent is a Legal Notice to Principal.**

**In Good Faith, Truth and Honor,**

I Am: _Mustafa Shakur Khan El_ .

Mustafa Shakur Khan El, Divine Being, In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by Fraudulent Construct of
ALL CAPITAL LETTERS
All Rights Reserved.
c/o 7307 Richland Court
Roswell Territory
Georgia Republic
Zip Exempt [30076]
Non-Domestic / Non-Subject / Non-Resident / Non-Corporate


cc:
High Commissioner Navi Pillay – United Nations, Human Rights Division, Geneva, Switzerland
Justice Sonia Sotomayor – The United States Supreme Court
Honorable Barack Obama – President of the United States
Honorable Eric Holder – United States Department of Justice
Secretary John Kerry – United States Department of State
The Supreme Court of Georgia
Governor Nathan Deal – Georgia State Governor
Attorney Sam Olens – Georgia Attorney General
Secretary Brian P. Kemp – Secretary for the State of Georgia
Creekside At Mansell – Home Owners Association

  

### Moorish National Republic Federal Government
### Societas Republicae Ea Al Maurikanos
**Northwest Amexem / Northwest Africa / North America / 'The North Gate'**
The True Aboriginal and Indigenous Natural Peoples of the Land

# Affidavit of Fact
# Notice of Default

Date: August 28th, 2014

**This Notice Is Sent via email: (host.citilinkdocs@citi.com)**
**This Notice Is Sent via United States Certified Mail.**

**From:** M. S. Khan El, Authorized Representative
c/o 7307 Richland Court
Roswell Territory
Via Georgia Republic
Via United States Republic, North America
Non-Domestic, Non-Resident
Zip Exempt [30076]

**To:** Michael Corbat, Chief Executive Officer of CitiGroup, Inc.
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: 7013 3020 0002 1728 8497

**To:** Jane Fraser, Chief Executive Officer of CitiMortgage
399 Park Avenue
New York, NY 10022
United States Certified Mail Number: 7013 3020 0002 1728 8480

**To:** CitiMortgage, Inc.
Attn: Customer Research Team
P.O. Box 10002
Hagerstown, MD 21747-0002
United States Certified Mail Number: 7013 3020 0002 1728 8473

#### Re: Account Number – 2001071257

This is a formal Lawful **'Notice of Default'** forwarded to Michael Corbat, Jane Fraser

and to the Representatives / Beneficiaries of the **Private Foreign Corporation** of

**CitiMortgage, Inc.**

I, **Mustafa Shakur Khan El**, *ex rel.* **CHARLES BENARD BOLTON**, have sent you

correspondence as listed below. I am hereby notifying you, Michael Corbat, Jane Fraser and all

other Profiting Representatives / Beneficiaries for CitiMortgage, Inc. of the **'Negative Default'**

in the matters listed below, and of any related former claims or actions initiated by you and held

in your Trusted Responsibility.

You were sent the following:

- **Affidavit of Fact – Notice of Breach of Contract,** delivered August 11th, 2014 and defaulted on August 16th, 2014.
- **Affidavit of Fact – Notice of Fraud** including copies of the **Notice of Breach of Contract,** delivered August 19th, 2014 and defaulted on August 24th, 2014.
- **Writ in the Nature of Request Discovery and Disclosure,** including copies of the **Notice of Breach of Contract** and **Notice of Fraud,** delivered August 26th, 2014 and defaulted on August 31[th], 2014.

You were advised to provide an **immediate Response and/or Cure** within **Five (5) days** of the Receipt of the '**Affidavit of Fact – Notice of Breach of Contract**', '**Affidavit of Fact – Notice of Fraud**' and the '**Writ in the Nature of Request Discovery and Disclosure**'.

The United States Postal Service tracking records show that the above – listed **'Affidavits'** and **'Requests'** were received and signed for by a Representative or Personnel in the establishment of **CitiMortgage, Inc.** on the 11th, 19th and 26th Day of August, 2014 A.D. The deadline for **'Response'** and/or **'Cure'** by you, Michael Corbat, Jane Fraser, or a Representative / Beneficiary of **CitiMortgage, Inc.** or its Profiting Agents and the **'Return'** of the **'Response'** and/or **'Cure'**, as required by the deadline of **Five (5) Days**, went into **"Default"** on the dates listed above.

You have **Five (5) Days** from the date of Receipt of this **'Notice of Default'** to Respond and/or Cure the fore-mentioned Lawful '**Affidavit of Fact – Notice of Breach of Contract**', '**Affidavit of Fact – Notice of Fraud**' and '**Writ in the Nature of Request Discovery and Disclosure**'. Failure to do so will be considered as an affirmation of disingenuous intent, and the said failure of **Response** will be deemed a **'Dishonor'** of this **'Notice'**.

All parties of interest are to send all future correspondences in c/o the clearly designated geographical location listed herein, via United States Mail. All correspondence sent otherwise will not satisfy 'Proper Service' and will be deemed contrary to proper communications. I am sure that all lawful parties are interested in Rebutting and Refuting Fraud and seeking to correct the commonly used methods of *'Malfeasance'* and *'Mail Fraud'* by which unconstitutional acts have been commonly committed through *'Misrepresentations'* and by callous acts of *'Misprision of Treason'* and *'Secrete'*.

**This Legal Notice to Principal is a Legal Notice to Agent; and this Legal Notice to Agent is a Legal Notice to Principal.**

**In Good Faith, Truth and Honor,**

I Am: _Mustafa Shakur Khan El_

Mustafa Shakur Khan El, Divine Being, In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by Fraudulent Construct of
ALL CAPITAL LETTERS
All Rights Reserved.
c/o 7307 Richland Court
Roswell Territory
Georgia Republic
Zip Exempt [30076]
Non-Domestic / Non-Subject / Non-Resident / Non-Corporate

cc:

High Commissioner Navi Pillay – United Nations, Human Rights Division, Geneva, Switzerland
Justice Sonia Sotomayor – The United States Supreme Court
Honorable Barack Obama – President of the United States
Honorable Eric Holder – United States Department of Justice
Secretary John Kerry – United States Department of State
The Supreme Court of Georgia
Governor Nathan Deal – Georgia State Governor
Attorney Sam Olens – Georgia Attorney General
Secretary Brian P. Kemp – Secretary for the State of Georgia
Creekside At Mansell – Home Owners Association

# EXHIBIT E

Deed Book **36467** Pg.  -**26**
Filed and Recorded Nov-10-2003 10:31am
**2003-0388605**
Georgia Intangible Tax Paid $540.00
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

After Recordation Return to:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

RETURN TO:
JACKSON AND HARDWICK
2325 LAKEVIEW PKWY
SUITE 275
ALPHARETTA, GA 30004

---

[Space Above This Line For Recording Data]

State of Georgia

## SECURITY DEED

| FHA Case No. |
| --- |
| 105-1637172703 |

THIS SECURITY DEED ("Security Instrument") is given on November 3, 2003
The Grantor is Charles Bolton, Individual

      AKA  CHARLES  S.  BOLTON

, and whose address is

7307 Richland Ct Roswell, GA 30076-

("Borrower"). This Security Instrument is given to CitiMortgage, Inc.

which is organized and existing under the laws of Delaware                                                          , and
whose address is  1000 Technology Drive, O' Fallon, MO   63304
                     ("Lender"). Borrower owes Lender the principal sum of
One Hundred Seventy Nine Thousand Seven Hundred Sixty Six
                      Dollars (U.S. $179,766.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which

002001071257  FHA Georgia Security Deed - 4/96
4R(GA) (9802)
Page 1 of 8          Initials: C.B.
   VMP MORTGAGE FORMS · (800)521-7291

# EXHIBIT E

Deed Book 36467 Pg 27

provides for monthly payments, with the full debt, if not paid earlier, due and payable on 12/01/2033                    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to the Lender and Lender's successors and assigns, with power of sale, the following described property located in Fulton                                County, Georgia:
See Schedule A Attached Hereto And A Part Hereof

which has the address of  7307 RICHLAND CT ROSWELL                                                [Street, City],
Georgia                                   30076-8841 [Zip Code]  ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
002001071257                                                                        Initials: C.B

⬛4R(GA) (9802)                              Page 2 of 8

# EXHIBIT E

Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

002001071257

4R(GA) (9802)                                      Page 3 of 8                                    Initials C.B

# EXHIBIT E

Deed Book 36467 Pg   29

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

# EXHIBIT E

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding 'the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

002001071257
⬤-4R(GA) (9802)

Initials: C.B

# EXHIBIT E

Deed Book 36467 Pg   31
|█ ██ ██ █ ██ █ ██ ██ █ █ ██ █ █ ██ █ ██ ██ ██ █ ██|

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

002001071257
⬭_4R(GA) (9802)                          Page 6 of 6                          Initials: C.B

# EXHIBIT E

Deed Book 36467 Pg    32

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| ☐ Condominium Rider | ☐ Growing Equity Rider | ☒ Other [specify] |
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | Other(s): |

Waiver of Borrower's Right
and Closing Attorney's Affidavit

002001071257
4R(GA) (8802)                          Page 7 of 8                          Initials: C.B

# EXHIBIT E

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
Unofficial Witness                            Charles Bolton              -Borrower

AKA CHARLES S. BOLTON

Notary Public.                                                County

002001071257
4R(GA) (9802)                    Page 8 of 8

EXHIBIT F



GA MEMBERSHIP CARD; EXACT NAME AS SEEN IN ORIGINAL BIRTH CERTIFICATE; OMITS NATIONALITY; VOID BY OMISSION; DERIVATIVE OF THE VOID AB INITIO BIRTH CERTIFICATE; AUTHORIZED REPRESENTATIVE MUSTAFA SHAKUR KHAN EL (MOOR AMERICAN) SEE ABOVE.



# EXHIBIT G

LOAN #: 002001071257

## BORROWER'S AGREEMENTS, ACKNOWLEDGEMENTS AND CERTIFICATIONS

The undersigned hereby make the following agreements, acknowledgments and certifications to CitiMortgage, Inc. (the "Lender"):

1. <u>Acknowledgement of Receipt of Disclosures</u>. I acknowledge that I have received, read, and reviewed the following disclosures:

   o Truth in Lending Disclosure Statement
   o Good Faith Estimate of Closing Costs, including Required Provider and Loan Servicing Disclosures
   o Affiliated Business Arrangement Disclosure
   o HUD-1 Uniform Settlement Statement
   o Your CitiMortgage Privacy Choices

2. <u>Acknowledgement of Receipt of Right to Cancel</u>. ☐ If checked, I acknowledge that each of us has received two (2) completed copies of the Notice of Right to Cancel. The Notice of Right to Cancel describes my right to cancel the new refinance transaction without cost and explains how any of us may cancel the transaction by notifying CitiMortgage, Inc. in writing at the address and by the date specified in the Notice of Right to Cancel.

3. <u>Acknowledgement of Receipt of Flood Notice/Insurance</u>. ☐ If checked, I acknowledge that I have received, read, and reviewed the Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance. I understand that if the property is located in an area designated by the Director of the Federal Emergency Management Agency as a flood hazard area that flood insurance is required.

4. <u>Agreement to Correct Errors and Omissions on Loan Documentation/Limited Power of Attorney</u>. I agree to cooperate with Lender in correcting clerical errors made on any loan closing documentation, including any errors or omissions I may have made in signing and completing the documentation. Corrections may be deemed necessary to enable Lender to sell, convey, seek guaranty, or market this loan to secondary investors.

   In consideration of Lender making this loan to me, I hereby grant Lender a limited power of attorney to correct any errors and omissions that Lender discovers upon the review of the loan closing documentation, by signing or initialing the correction on my/our behalf. Lender will provide me with copies of the corrected documents, and Lender will not use the limited power of attorney to change the principal amount of the loan, term, interest rate, payments or other terms of the loan.

5. <u>Credit Reports</u>. I acknowledge that the Lender, its agents, successors and assigns, may report my/our name(s), account information and other information regarding their credit experiences with me to other proper persons, such as credit reporting agencies and other lenders. The Lender will normally obtain credit reports for all loan applications and for updates, renewals or extensions of any credit granted. Upon request, Lender will inform me if a report has been obtained and will give me the name and address of the agency furnishing the report. Lender may obtain credit reports for any other purposes including to review and collect the account, for marketing purposes, and to audit or validate our systems, policies and procedures or those of our affiliates or vendors.

6. <u>Authorization to Transfer Insurance, Documents, and/or Escrow Balance to New Loan</u>. ☐ If checked, the Lender services the loan being refinanced. I authorize the Lender to transfer hazard and flood insurance policies and loan documents (for example, original stock certificate, stock power, and proprietary lease for coop loans) to the new loan. If the lender holds an escrow account balance on the loan being refinanced, I authorize the transfer of this balance to the new loan. I recognize that this transferred escrow balance may be higher or lower than the escrow balance required on the new loan. If it is lower, the Lender may require me to make an additional escrow deposit at closing. If it is higher, the excess will be refunded to me at closing.

7. <u>Escrow Waiver</u>. ☐ If checked, the Lender is not requiring the establishment of an escrow account at closing. I agree that Lender's waiver of my obligations to make escrow payments to Lender may be revoked at any time by Lender or its assigns pursuant to the terms of the security instrument. I agree that I am responsible for directly paying taxes, insurance or other escrow items on or before their due dates. I will mail hazard and flood insurance receipts to CitiMortgage, Inc., P.O. Box 7706, Springfield, OH 45501, tax receipts to CitiMortgage, Inc., P.O. Box 23689, Rochester, NY 14692, and receipts for any other items to CitiMortgage, Inc., P.O. Box 790001, St. Louis, MO 63179-0001.

_____          _____
Charles Bolton

_____          _____

Nm:BOLTON(1656098), Rq:468.# EXHIBIT H

Deed Book **46373** Pg   **73**
Filed and Recorded Feb-22-2008 08:44am
        **2008-0043242**
Georgia Intangible Tax Paid $58.50
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

When recorded mail to: *MPG*
First American Title Lenders Advantage
Loss Mitigation Title Services- LMTS
1100 Superior Ave., Ste 200
Cleveland, OH 44115  *3909964*
Attn: National Recordings 1120

Loan # 2001071257

NEW Money
$19,358.43

## LOAN MODIFICATION AGREEMENT
(PROVIDING FOR FIXED INTEREST RATE/CAPITALIZATION)

This Loan Modification Agreement ("Agreement"), made 01/03/08, between CHARLES BOLTON (Borrower) residing at 7307 RICHLAND CT, ROSWELL, GA 30076-8841, and CitiMortgage, Inc. (Lender) having offices at 5280 Corporate Drive, Frederick, MD 21703 and amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") dated 11/03/03 and recorded on 11/10/03, Document number 2003-0388605, Book number 36467, Page 26-37 in the Official Records of FULTON COUNTY, Georgia and (2) the Note bearing the same date as, and secured by the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 7307 RICHLAND CT, ROSWELL GA, 30076-8841, the real property described as being set forth as follows:

### (SEE ATTACHED LEGAL DESCRIPTION)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 12/31/07, the amount of payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $ 179,151.90. The Borrower acknowledges that interest has accrued but has not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses in the total amount of     $ 19, 338.43, have been added to the indebtedness under the terms of the Note and Security Instrument and the loan re-amortized over 323 months. When payments resume on 02/01/08, the New Unpaid Principal Balance will be $ 198,490.33.

2. The Borrower promises to pay the New Unpaid Principal Balance, plus Interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.125% effective 01/01/08 (the "Interest Change Date"). The Borrower promises to make monthly payments of principal and interest of U.S. $ 1,255.61 (which does not include and amounts required for Insurance and/or Taxes) beginning on 02/01/08 and, continuing thereafter on the same date of each succeeding month until principal and interest are paid in full.

If on 12/01/34 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this agreement, the Borrower will pay those amounts in full on the Maturity Date. All other terms stated in the Note remain the same.

The Borrower will make such payments at Post Office Box 9481, Gaithersburg, MD 20898-9481, or at such other place as the Lender may require.

3. If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

Page 1

Nm:BOLTON(1656098), Rq:468, EXHIBIT H

Deed Book 46373 Pg    74

4. The Borrower also will comply with all the other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all the payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make the under Security Instrument; however, the following terms and provisions are forever canceled, null, and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and,

(b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, or part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with, all of the terms and provisions thereof, as amended by this Agreement.

6. It is mutually agreed that said security instrument shall continue a first lien upon the premise and that neither the obligation evidencing the aforesaid indebtedness nor the security instrument the same shall in any way be prejudiced by this agreement, but said obligation and security instrument and all the covenants and agreements thereof and the rights of the parties thereunder shall remain in full force and effect except as herein expressly modified.

IN WITNESS WHEREOF, the parties have signed, sealed and delivered this agreement on the date above written.

| 1-16-08 | _Charles Bolton_ |
| --- | --- |
| Date | Borrower - CHARLES BOLTON |

| | |
| --- | --- |
| Date | Borrower - |

| | |
| --- | --- |
| Date | Borrower - |

| | |
| --- | --- |
| Date | Borrower - |

| | CitiMortgage, Inc. |
| --- | --- |
| 1/24/08 | By: |
| Date | Lender -    Stacey Andrew |
| | Assistant Vice President |

CITIMORTGAGE, INC.

SEAL

NEW YORK

Page 2

Nm:BOLTON(1656098), Rq:466. # EXHIBIT H

Deed Book **46373** Pg    **75**

————————[Space Below This Line for Acknowledgments]—————————

State of Florida )
                 )SS
County of Pinellas )

On this **16th** day of **January**        , **2008**, before me personally appeared **Charles Bolton**    , to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that HE/SHE/THEY executed the same as HIS/HER/THEIR free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public **Christine Hall**

My Commission Expires: **2/21/10**

> CHRISTINE L. HALL
> MY COMMISSION # DD 520586
> EXPIRES: February 21, 2010
> Bonded Thru Budget Notary Services

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

State of )
         ) SS
County of )

On this _____ day of _____, _____, before me personally appeared _____ to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that HE/SHE/THEY executed the same as HIS/HER/THEIR free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

My Commission Expires: _____

Page 3

Nm:BOLTON(1656098), Rq:466. **EXHIBIT H**

Deed Book **46373** Pg    **76**

STATE OF   **Maryland**
COUNTY OF   **Frederick**

On _____ 12/4/08 _____ before me, _Timika Thrasher_ , a Notary Public in and for
said County and State, personally appeared _____ **Stacey Andrew, Assistant Vice President** _____ -
and _____ **CitiMortgage, Inc** _____ -
known to be (or proved to be on the basis of satisfactory evidence) the person(s) whose name(s) is/are subscribed
to this Loan Modification instrument that acknowledge to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

_Nemika Thrasher_                           _Timika Thrasher_

Notary Signature                           Notary Name (Typed or Printed)

Page 4

Nm:BOLTON(1656098). Rq:466. # EXHIBIT H

Deed Book **46373** Pg **77**

| | |
|---|---|
| **Servicer Loan #:** | 2001071257 |
| **Title #:** | 3909964 / GA |
| **Borrower's name:** | **Charles Bolton** |
| **Address:** | **7307 Richland Ct., Roswell, GA  30076-8841** |

This MODIFICATION AGREEMENT document was prepared by:

**CitiMortgage Inc.**
**Loss Mitigation Department**
**5280 Corporate Drive**
**Frederick, MD 21703**
**301-696-4809 phone / 301-696-4473 fax**
**Email:  Annette.Lawson@Citi.com**

*[signature]*                2/14/08

**Annette Lawson**        **Date**

Nm:BOLTON(1656098), Rq:468. EXHIBIT H

Deed Book 46373 Pg    78
**Catchelene  Robinson**
Clerk of Superior Court
Fulton County, Georgia

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 545 OF THE
1ST DISTRICT, 2ND SECTION  OF FULTON COUNTY, GEORGIA, BEING LOT 28, OF
CREEKSIDE AT MANSELL SUBDIVISION, UNIT IV, BUILDING 8,   AS PER PLAT
RECORDED IN PLAT BOOK 219, PAGES 24-25, RECORDS OF FULTON COUNTY,
GEORGIA,  WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE
AND MADE A PART OF THIS DESCRIPTION.

**BOLTON**
14053832                              **GA**
FIRST AMERICAN LENDERS ADVANTAGE
MODIFICATION AGREEMENT

(03-ALPH-13811,PFD/03-ALPH-13811/10)

# · EXHIBIT I ·

When Recorded Return To:
CitiMortgage, Inc.
Attn: Loss Mitigation Department #0010
5280 Corporate Drive
Frederick, MD 21703 _____ Loan # 2001071257

## LOAN MODIFICATION AGREEMENT
### (PROVIDING FOR FIXED INTEREST RATE/CAPITALIZATION)   **Certified True Copy**

This Loan Modification Agreement ("Agreement"), made 07/01/11, between CHARLES BOLTON,
("Borrower") residing at 7307 RICHLAND CT ROSWELL GA, 30076-8841 and CitiMortgage, Inc. ("Lender")
having offices at 5280 Corporate Drive, Frederick, MD 21703 and amends and supplements (1) the Mortgage,
Deed of Trust, or Deed to Secure Debt (the "Security Instrument") dated 11/03/03 and recorded on 11/10/03,
Document number 2003-03888605, Book number 36467, Page 26-37 in the Official Records of FULTON
County, Georgia and (2) the Note bearing the same date as, and secured by the Security Instrument , which
covers the real and personal property described in the Security Instrument and defined therein as the "Property",
located at 7307 RICHLAND CT, ROSWELL GA, 30076-8841, the real property described as being set forth as
follows:

### (SEE ATTACHED LEGAL DESCRIPTION)

In consideration of the mutual promises and agreements exchanged , the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 07/01/11, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance")
is U.S. $ 214,023.63. The Borrower acknowledges that interest has accrued but has not been paid and the Lender
has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or
enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses in the total
amount of $ 15,963.25, have been added to the indebtedness under the terms of the Note and Security
Instrument and the loan re-amortized over 360 months. When payments resume on 08/01/11, the New Unpaid
Principal Balance will be $ 229,986.88.

### APN# 091-2-226-0-0545-035

2. The Borrower promises to pay the New Unpaid Principal Balance, plus Interest, to the order of Lender.
Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.500% effective 07/01/11 (the
"Interest Change Date"). The Borrower promises to make monthly payments of principal and interest of U.S. $
1,165.31 (which does not include and amounts required for Insurance and/or Taxes) beginning on 08/01/11 and
continuing thereafter on the same date of each succeeding month until principal and interest are paid in full.

If on 07/01/41 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as
amended by this Agreement, the Borrower will pay those amounts in full on the Maturity Date. All other terms
stated in the Note remain the same.

The Borrower will make such payments at Post Office Box 9481, Gaithersburg, MD 20898-9481, or at such
other place as the Lender may require.

3. If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in the
Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written
consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security
Instrument.

If the Lender exercises this option , the Lender shall give the Borrower notice of acceleration. The notice shall
provide a period of not less than 30 days from the date the notice is delivered or mailed within which the
Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to
the expiration period, the Lender may invoke any remedies permitted by the Security Instrument without further
notice or demand on the Borrower.
Page 1

# EXHIBIT I

4. The Borrower also will comply with all the other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all the payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make the under Security Instrument; however, the following terms and provisions are forever canceled, null, and void, as of the date specified in paragraph No. 1 above:

　　　(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and,

　　　(b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, or part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with, all of the terms and provisions thereof, as amended by this Agreement.

6. It is mutually agreed that the Security Instrument shall constitute a first lien upon the premise and that neither the obligation evidencing the aforesaid indebtedness nor the Security Instrument shall in any way be prejudiced by this Agreement, but said obligation and Security Instrument and all the covenants and agreements thereof and the rights of the parties thereunder shall remain in full force and effect except as herein expressly modified.

IN WITNESS WHEREOF, the parties have signed, sealed and delivered this agreement on the date above written.

7-6-2011　　_Charle 6 Bolta_
Date　　　　Borrower - CHARLES BOLTON


_____　　_____
Date　　　　Borrower -


_____　　_____
Date　　　　Borrower -


_____　　_____
Date　　　　Borrower -

CitiMortgage, Inc.
10/14/14　　By: _____
Date　　　　Lender -
　　　　　　　　~~Assistant Vice President~~
　　　　　　　　Larry Baumann
　　　　　　　　Vice President

# EXHIBIT I

-----------------[Space Below This Line for Acknowledgments]-----------------

State of           )
                    )SS

County of         )

    On this **6** day of **July**, **2011**, before me personally appeared **Charbe Belter**, to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that HE/SHE/THEY executed the same as HIS/HER/THEIR free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

My Commission Expires: _____

C. J. KELL
NOTARY
EXPIRES
GEORGIA
July 8, 2012
PUBLIC
CKEE COUN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

State of           )
                   ) SS

County of         )

    **On this** _____day of _____, _____, before me personally appeared _____to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that HE/SHE/THEY executed the same as HIS/HER/THEIR free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

My Commission Expires: _____

Page 3

# EXHIBIT I

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

State of Missouri )
)
County of St Charles )

On _____ 10/14/2011 _____, before me appeared Larry Baumann , to me personally known, being by me duly sworn or affirmed, whose address is 1000 Technology Drive, O'Fallon, MO 63368-2240 did say that he is the Vice President Of Citimortgage, Inc., and that the seal fixed to the foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation, by authority of its Board of Directors, and Larry Baumann acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.

_____
Notary Public

KRISTEN DUGGER
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Oct. 31, 2011
Commission # 07040187

# EXHIBIT I

BOLTON

2001071257

Legal Description: A PARCEL OF LAND LOCATED IN THE STATE OF GEORGIA, COUNTY OF
FULTON, WITH A SITUS ADDRESS OF 7307 RICHLAND CT, ROSWELL, GA
30076-8841 CURRENTLY OWNED BY BOLTON CHARLES B HAVING A TAX
ASSESSOR NUMBER OF 12-2260-0545-035 AND BEING THE SAME
PROPERTY MORE FULLY DESCRIBED AS L-28 B-8 C AND DESCRIBED IN
DOCUMENT NUMBER 32514-648 DATED 04/18/2002 AND RECORDED
06/06/2002.

# EXHIBIT J

| From: | Taylor, Michael5 <michael5.taylor@citi.com> |
|---|---|
| To: | 'cbol5095@gmail.com' <cbol5095@gmail.com> |
| CC: | Homeowner Support Quality Communication <homeownersupport.qualitycommunication@citi.com> |
| Subject: | (Secure) Modification/TPP Information |
| Date: | March 25, 2014 4:07:31 PM EDT |
| Secure Actions: | Reply |

Good Afternoon Charles Bolton,

Concerning the TPP information it is enclosed here:

***PLEASE REVIEW ALL STEPS - borrowers need to understand full program so they are aware of subordinate lien step******

I reviewed this loan for FHA HAMP and we are able to offer this program to the mortgagor. Please advise the mortgagor if there are any liens on the property they must be removed in order to complete all processes in program. Please advise if any questions regarding this.

Please advise that all steps must be completed for this program - please review all steps with borrower:
The program is broken down into 3 processes the details of the program are:

1st process of the program is a Trial plan:
- 3 month Trial (3 months for delinquent loans and 4 months for current loans)                          - Trial dates are 04/01/14 - 06/01/14
- Amount of payments due on this Trial - $ 1190.49 (this is where we estimate the payment to be when the program is complete - this payment includes PITI.)
 P&I portion of payment is $ 869.43
 T&I portion of payment is $ 321.06
- Funds must be certified Funds during the program.
- Mortgagor would receive documents that review the Trial portion of the program that will need to be signed and returned.

2nd process in program - Partial claim:
We will take past due payments and a portion of principle balance and place them into a subordinate lien that HUD will hold until the mortgagor sells, refinances or pays the property off at which time the lien would be due in full. All liens must be resolved prior to this step

The amount of the subordinate lien will be as follows:

Past due Payments of $ 6743.92 (Payment for 12/01/13- 03/01/14)
Principle Balance of $ 49471.76

# EXHIBIT J

Foreclosure fees and cost of  $ 114.36
Escrow Shortage  $ 1312.31
Total amount of lien request - $ 57642.35

2 sets of documents would be mailed to the client at this process.  The 1st set of documents from Citi will review the breakdown of these funds and how they will apply to the account when HUD forwards the funds - these documents will need to be signed and returned to Citi.  The second set would be subordinate lien documents stating that HUD will hold the lien these documents will need to be signed and notarized and returned to MSV.  Upon receipt of these documents we will submit a claim to HUD for the funds.  Upon receipt of these funds we will then start the 3rd and final process of the program.

3rd process in program - Modification:

The modification will do the following:

Reduces the mortgagors interest rate from 4.50% to 4.50% fixed rate.
Terms would be extended out to a 30 year term
Mortgagor would receive a set of modification documents that would need to be signed, notarized and returned.
We are estimating the payment to be $ 1190.49
 this payment may fluctuate due to escrow.

It is very important that the mortgagor understand that if the mortgagor does not return any of the documentation that we have sent regarding this program or fails to make the payments set up, the program would be null/void.  Please also advise that even though the trial will only be 3 months the mortgagor will need to continue to make that trial payment amount monthly as we proceed with the program. Program can take 4-6 months to complete.

Please also advise borrower all parties that signed the origination documents will be required to sign the final documents for this program.

Mortgagor has outstanding inspection fees in the amount of $ 27.00 that will need to be paid (please try to collect these funds at time of approval)  - all late charges have been waived.

Below is the information for payments:
Please send payments to:

Funds must be Certified funds (western union, cashiers check, money order or debit by phone)
CitiMortgage
1000 Technology Drive
MS 420
O'Fallon, MO   63368

# EXHIBIT J

Or contact Customer Service or HOST agent:
1-866-272-4749

Western Union Information:
Code City - CMI
Code State - MO
Please reference loan number:

Thanks!

\*\*\* Please send documents to HOST.CitiLinkdocs@citi.com or fax them to 1-866-940-8125. Please have the loan number in the subject line (e-mail) or on the top of each page (fax). Also please be advised it takes 24-48 hours for documents to be uploaded to the file database for reviewing\*\*\*

Remember, during any point of your treatment review you can reach me at 855-843-2549, EXT. 0475018†, Monday - Thursday 8:00 a.m. – 9:00 p.m. (ET), Friday 8:00 a.m. - 7:00 p.m. (ET), and Saturday 8:00 a.m. – 5:00 p.m. (ET) 1, or email me at michael5.taylor@citi.com<mailto:michael5.taylor@citi.com> 2. I look forward to working with you.

Sincerely,

Michael Taylor
Homeowner Support Specialist
855-843-2549, Extension 0475018† (use leading zero).
CitiMortgage, Inc.
1000 Technology Drive
Mail Station 420
O'Fallon, MO 63368

ABOUT THIS MESSAGE
† Calls are randomly monitored and recorded to ensure quality service.
1 Hours of operation provided reflect general hours for the homeowner support specialist unit.
2 If contacting your homeowner support specialist through e-mail please do not include confidential information. E-Mail communication is randomly monitored to ensure quality service.

CitiMortgage, Inc. is a debt collector and any information obtained will be used for that purpose. Please Note: In the event you are subject to an Automatic Stay issued by a United States Bankruptcy Court or the referenced debt has been

# EXHIBIT J

discharged in Bankruptcy, this communication is not intended to collect a debt.

# EXHIBIT J

 

April 2, 2014

CHARLES BOLTON
AKA CHARLES S BOLTON
7307 RICHLAND CT
ROSWELL, GA 30076-8841

RE: Property Address: 7307 RICHLAND CT
ROSWELL, GA 30076-8841

CitiMortgage Loan #:    2001071257

Dear CitiMortgage Customer(s),

**You may qualify for an FHA Home Affordable Modification Plan - a way to make your payment more affordable.**

We have enclosed a customized FHA Home Affordable Modification Trial Period Plan ("*Trial Period Plan*"). If you qualify under the FHA Home Affordable Modification Program by complying with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure. In order to qualify you for the program, please complete and return the included Trial Period Plan.

The monthly trial period payments are based on the income information that you previously provided to us. The payments are an estimate of what your payment will be IF we are able to modify your loan under the terms of the program.

**TIME IS OF THE ESSENCE.**

**To Accept This Offer**
If you have notified us of your intent to accept the offer by **April 16, 2014**, which is 14 calendar days from the date of this letter,  or, if you have not notified us and a foreclosure sale has not occurred, you must send your first Trial Period Plan payment on or before **04/01/14** If you fail to make the first Trial Period Plan payment by **04/01/14** and we do not receive the payment by the last day of the month in which it is due, this offer has been revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

**Your first trial period payment is due by 04/01/14.  If your documents are not returned by April 16, 2014, you may be disqualified from the FHA Home Affordable Modification Program. Keep a copy of all documents for your records.**

**Your remaining trial period payments in the amount of $ 1,190.49  per month will be due on or before the first of the month. These payments should be sent instead of, not in addition to, your normal monthly mortgage payment and are required in Certified Funds.** If the trial period payments are made in amounts different from the amount stated, your loan may not be modified. If you cannot afford the trial period payments shown above, please call us at 1-855-843-2549*.

Payments can be made as Certified Funds in the form of: Debit by phone, Western Union, Cashier's Check or Money Order made payable to CitiMortgage, Inc. Be sure to include your loan number.

Western Union Quick Collect - Western Union charges a fee for this service:
Code City - CMI
Code State - MO
Reference number - your loan # 2001071257

# EXHIBIT J

Cashier's Check or Money Order:
CitiMortgage, Inc.
1000 Technology Drive
Mail Station 420
O'Fallon, MO 63368

During the trial period, we will report the account status of your loan to the credit reporting agencies even if you make your trial period payments on time. If the status of your loan was current prior to entering into your trial period plan, it will become delinquent. We will report the account status during the trial period plan to reflect the appropriate level of delinquency. For more information about your credit score, go to: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

Please let us know no later than **April 16, 2014** that you accept the Trial Period Plan. Now is the time to act. We are ready to help you.

**A statement of the interest of the creditor: Program requirements satisfied and approval is in the best interest of the creditor.**

**The Net Present Value analysis was not performed as it was not required for approval under the FHA Home Affordable Modification program.**

## YOU STILL HAVE OPTIONS TO AVOID FORECLOSURE

Please contact us immediately, we would like to discuss the hardship assistance options that may help make your mortgage payments more affordable and avoid foreclosure. You have the option of completing a loss mitigation application to receive a full evaluation of all loss mitigation options available to you.

You may seek assistance at no charge from HUD-approved counselors and may request assistance in understanding this letter by asking for MHA HELP at the HOPE Hotline Number 888-995-HOPE.

If you have questions regarding this letter or if you are concerned with how we have handled your account, please contact Michael Taylor at 1-855-843-2549* ext. 0475018 Monday - Thursday 7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:30 p.m. CT, and Saturday 7:00 a.m. - 4:00 p.m. CT**, or via email at: michael5.taylor@citi.com†. You may also contact me via mail at: CitiMortgage, Inc., Homeowner Support Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

In accordance with federal law, CitiMortgage has designated the following address where you can send a written request for information, a written notice of error, or a qualified written request:

CITIMORTGAGE, INC.
Attn: Customer Research Team
P.O. Box 10002 Hagerstown, MD 21747-0002

Sincerely,

CitiMortgage, Inc.

*Attachment: Trial Period Plan*

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

# EXHIBIT J

\* Calls are randomly monitored and recorded to ensure quality service.

\*\* Hours of operation provided reflect general hours for the Homeowner Support Specialist unit.

† If responding through e-mail, please do not include confidential information.  E-Mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**To the extent your obligation has been discharged or is subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.   The federal agency that administers compliance with this law concerning this creditor is the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Avenue - Suite 3450, Houston TX 77010.

# EXHIBIT J

## FHA HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
### (Step One of Two-Step Documentation Process)

**Investor Loan #: <u>2001071257</u>**
**Trial Period Plan Effective Date: [Beginning of Trial Period]** <u>04/01/14</u>
**Borrower ("I")1:** <u>CHARLES  BOLTON</u>
**Lender ("Lender"):** <u>CitiMortgage, Inc.</u>
**Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):**
<u>11/03/03</u>
**Loan Number:** <u>2001071257</u>
**Property Address ("Property"):** <u>7307 RICHLAND CT</u>
**City:** <u>ROSWELL</u>          **State:** <u>GA</u>          **Zip:** <u>30076-8841</u>


If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with an FHA Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents. If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer").

1. **My Representations.** I certify, represent to Lender and agree:
    A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. I live in the Property as my principal residence, and the Property has not been condemned;
    C. There has been no change in the ownership of the Property since I signed the Loan Documents;
    D. I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

    E. Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and
    F. If Lender requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $ 1,190.49.

    1) **$ 1,190.49 is due by 04/01/14\*** (payment is Past-Due)
    2) **$ 1,190.49 is due by 05/01/14**
    3) **$ 1,190.49 is due by 06/01/14**


**\*I understand that my first payment is due by 04/01/14, and this signed Trial Period Plan must be received by the Lender no later than April 16, 2014, or I may be disqualified from the FHA Home**

# EXHIBIT J

**Affordable Modification Program.**

Please be advised that there are outstanding fees for inspection and servicing in the amount **of $ 27.00** (all late charges have been waived). All funds for the FHA HAMP program must be Certified funds.  The following are acceptable Certified methods of payment:  Western Union, Cashier's Check, Money order and/or debit by phone.

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

    A.  TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

    B.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

    C.  If prior to the Modification Effective Date, (i) I have not made the Trial Period payments required under Section 2 of this Plan; (ii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iii) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

    D.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, and (ii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/ or subordination agreement(s) from other lien holders, as Lender determines necessary.

    E.  I understand that, after signing and returning the enclosed documents, if I fail to make the Trial Period Payments on time, I will be disqualified from the an FHA Home Affordable Modification and will be ineligible to reapply for the program in the future.

**3.**  **The Modification.** If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations.

This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as

# EXHIBIT J

modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e., on the first day of the month following the month in which the last Trial Period Payment is due).

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the Lender has waived this requirement in writing.

   B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

   C. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

   D. That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.

   E. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) HUD in connection with its responsibilities under the FHA Home Affordability and Stability Plan; (b) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (c) companies that perform support services for the FHA Home Affordable Modification Program.

   F. That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

   G. During the trial period, we will report the Account Status of your loan to the credit reporting agencies even if you make your trial period payments on time. If the status of your loan was current prior to entering into your trial period plan, it will become delinquent. We will report the Account Status during the trial period plan to reflect the appropriate level of delinquency. For more    information    about    your    credit    score,    go    to: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

In Witness Whereof, the Lender and I have executed this Plan.

CHARLES BOLTON

# EXHIBIT J

Date

_____

Lender

_____

By

_____

Title

_____

Date

—

# EXHIBIT K



June 19, 2014

CHARLES BOLTON A.K.A CHARLES S.BOLTON

7307 RICHLAND CT
ROSWELL, GA 30076-8841

RE:     Loan Number: 2001071257
        Property Address: 7307 RICHLAND CT
                        ROSWELL, GA, 30076-8841

Dear Mortgagor,

CitiMortgage, Inc. (CitiMortgage) has reviewed your request for a partial claim. The enclosed
Partial Claim Agreement sets forth the terms under which CitiMortgage will accept a schedule of payments.
These payments must continue to be made each month.

Please read the contract thoroughly so you understand your responsibilities under this agreement,
and sign and return the Partial Claim Agreement as follows:

1) Return original agreement to:
        CitiMortgage, Inc., 1000 Technology Drive, MS 420, O'Fallon, MO 63368

2) All payments must be in **certified funds** while your account is delinquent.
        a. Via Western Union Quick Collect. Western Union charges a fee for this service.
        b. Provide the operator with the city code of CMI, state code of MO, and your loan number.
        c. Obtain the Money Transfer Control Number (MTCN) as confirmation of the transaction.

3) Your contribution and future payments may be sent to: CitiMortgage, Inc., Attention Exception
Payments 1156-7, 4740 121st Street, Urbandale, IA 50323-2402.

**TIME IS OF THE ESSENCE.**

**TO ACCEPT THIS OFFER**
If you have notified us of your intent to accept the offer by 07/03/2014, which is 14 calendar days from the date of
this letter, or, if you have not notified us and a foreclosure sale has not occurred, you must return this partial claim
document on or before 07/03/2014 . If you fail to return this partial claim document by 07/03/2014 and / or we do
not receive the continuing monthly payment by the last day of the month in which it is due, this offer will be
revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

It is important that you return the signed contract and your contribution by  07/03/2014 or this Partial Claim
Agreement
will be considered null and void and we will resume collection and/or foreclosure activity, if applicable.

If you have questions regarding this letter or need to make other arrangements for returning the Partial Claim
Agreement and the contribution, please call Sesalee Woods at (877)245-2511, EXT. 0475290, Monday - Thursday
7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:30 p.m. CT, and Saturday 7:00 a.m. - 4:00 p.m. CT , or via email at:
sesalee.m.woods@citi.com. You may also contact me via mail at:  CitiMortgage, Inc., Homeownership Support

# EXHIBIT K

Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

In accordance with federal law, CitiMortgage has designated the following address where you can send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
Attn: Customer Research Team
P.O. Box 10002
Hagerstown, MD 21747-0002

Sincerely,
Sesalee Woods
Homeowner Support Specialist
CitiMortgage, Inc.

Cc: File

## NOTICES

TTY Services available: Dial 711 from the United States; Dial 866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for the Homeowner Support Specialist unit.

If responding through e-mail please do not include confidential information. E-Mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**To the extent your obligation has been discharged or is subject to an automatic stay of bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.**

Information for Massachusetts Residents:

**NOTICE OF IMPORTANT RIGHTS**
**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

# EXHIBIT K

## STIPULATED PARTIAL CLAIM AGREEMENT

THIS **STIPULATED PARTIAL CLAIM** AGREEMENT made as of the June 19, 2014, by and between CitiMortgage, Inc. ("CitiMortgage"), a corporation with a principal place of business at 1000 Technology Drive, MS 420, O'Fallon MO 63368, and CHARLES BOLTON, whose mailing address is 7307 RICHLAND CT, ROSWELL, GA 30076-8841 and collectively known as "Borrower".

Recitals:

A. CitiMortgage is the owner and holder or servicing agent of a certain Note and Deed of Trust/Mortgage made and executed or assumed by the Borrower,

B. The Borrower has failed to make regular monthly payments in accordance with the terms of the Note and Deed of Trust/Mortgage, and therefore, the loan is in default, and CitiMortgage has exercised its rights to institute collection (and/or foreclosure, if applicable); and

C. The Borrower has requested that CitiMortgage enter into this Partial Claim Agreement to place its collection activities and/or foreclosure action, if applicable, on hold. CitiMortgage wishes to assist Borrower, but does not wish to discontinue collection activities and/or foreclosure action, if applicable, until the loan is brought current.

Agreement:

1) The total amount needed for the second step of the HAMP Program or the final step for the stand alone HAMP Partial Claim, which includes the MARCH, payment, is as follows:

| | | |
|---|---|---|
| 4 payments at $ 1685.98 | | $ 6,743.92 |
| (From 12/01/13-03/01/14) | | |
| Late Charges: | | $ 0.00 |
| Other: prin reduction | $ 49,471.76 | |
| Other: escrow shortage | $ 1,312.31 | |
| Foreclosure Fees: | | $ 114.36 |
| Total Arrears Due: | | $ 57,642.35 |
| Partial Claim Amount from HUD: | | $ 57,642.35 |
| **Borrower contribution:** | | **$ 0.00** |

**Borrower contribution and signed Partial Claim Agreement are due back to our office on or before 07/03/2014.**

2) Beginning on 04/01/2014, Borrower shall resume making regularly scheduled monthly payments of $1190.49. Regularly scheduled monthly payments must continue to be made each month. Failure to make regularly scheduled monthly payments will result in program failure. In addition to their regularly scheduled monthly payments, Borrower shall pay the above arrears as follows:

    $ 1,190.49 due 04/01/2014 - PAID
    $ 1,190.49 due 05/01/2014 - PAID
    $ 1190.49  due 06/01/2014 - PAID
    $ 1,184.41 due 07/01/2014 - First modified payment due

# EXHIBIT K

3) By entering into this Partial Claim Agreement, CitiMortgage is neither modifying, nor waiving any rights under the Note and Deed of Trust/Mortgage, which shall continue in full force and effect. CitiMortgage is only agreeing to forbear from further collection activities (and/or foreclosure action, if applicable), on the condition that Borrower makes all regularly scheduled payments due under the Note and Deed of Trust/Mortgage and arrears payments under this Partial Claim Agreement, including the borrower contribution. In the event that Borrower does not make all payments under this Partial Claim Agreement, CitiMortgage will proceed with collection activities (and/or foreclosure action, if applicable), without further notice, except as prohibited by state law.

4) All money paid to CitiMortgage during the term of this Partial Claim Agreement is due and owing and not refundable.

5) Borrower must sign a subordinate note and deed of trust, payable to the Secretary of HUD, agreeing to repay the Partial Claim amount submitted. The Partial Claim payment will be due and payable to HUD when the loan owned, held, or serviced by CitiMortgage matures, is accelerated or when the property is sold.

6) Should HUD deem this loan ineligible for the Partial Claim Program, Borrower is responsible for and must make arrangements to cure the remaining delinquency with CitiMortgage.

7) This payment Partial Claim Agreement is subject to change if the regular payment amount changes. If you have questions regarding your new payment amount please contact CitiMortgage. The monthly payment provided for in this schedule may increase or decrease due to the following conditions:

> (1) Variable Interest Rate or Graduated Payment loans;
> (2) Escrow impound changes or advances;
> (3) Costs, fees and reimbursements provided for under the loan documents that
> may be assessed to the account.

8) CitiMortgage will not discontinue the pending collection activities (and/or foreclosure action, if applicable), until Borrower's account is current.

9) If you file for bankruptcy at any time during the term of this Partial Claim Agreement, please notify CitiMortgage immediately as it may affect the terms of this stipulated Partial Claim Agreement.

10) All money paid to CitiMortgage during the term of this Partial Claim Agreement must be in *certified funds*.

11) All payments under this Partial Claim Agreement are due on the due dates. There is no grace period under the plan for any payments.

12) Borrower certifies and represents to Lender and agrees that Borrower's obligation to repay the debt has
not been discharged under Chapter 7 Bankruptcy or is not currently subject to an Automatic Stay
issued by a United States Bankruptcy Court.  If Borrower files for bankruptcy at any time during term
of this Partial Claim Agreement, Borrower will notify CitiMortgage immediately as it may affect the
terms of this Partial Claim Agreement.

Loan No: 2001071257
**CitiMortgage, Inc.**

_____          _____
CitiMortgage Loss Mitigation                          Date

*I/we agree to all terms as set forth in this* Partial Claim *Agreement:*

# EXHIBIT K

_____        _____
Borrower: CHARLES  BOLTON A.K.A CHARLES S.BOLTON        Date

# EXHIBIT K

EXHIBIT A

**BORROWER: CHARLES BOLTON**

**LOAN NUMBER: 2001071257**

**LEGAL DESCRIPTION:**

**THE FOLLOWING DESCRIBED PROPERTY LOCATED AT 7307 RICHLAND COURT, FULTON COUNTY, ROSWELL, GEORGIA 30076, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 545 OF THE 1ST DISTRICT, 2ND SECTION OF FULTON COUNTY, GEORGIA AND BEING LOT 28 OF CREEKSIDE AT MANSELL SUBDIVISION, BUILDING 8 UNIT IV, AS PER PLAT RECORDED IN PLAT BOOK 219, PAGES 24 THRU 25, FULTON COUNTY, GEORGIA RECORDS WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

**BEING THE SAME PROPERTY CONVEYED TO CHARLES B. BOLTON BY DEED FROM SAMPHUONG PHOK RECORDED 06/06/2002 IN DEED BOOK 32514 PAGE 646, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA.**

**ALSO KNOWN AS: 7307 RICHLAND CT, ROSWELL, GA 30076-8841**

# EXHIBIT K



## Subordinate Documents Checklist

Enclosed are two sets of Partial Claim documents that will need to be properly completed, notarized and returned using the enclosed return envelope. You may keep one set for your records. The other set will need to be returned no later than the date required on the enclosed documents.

Please note that First American Mortgage Source prepared the Partial Claim documents pursuant to CitiMortgage's instructions, merely for the purpose of ensuring that the documents are executed properly and are in recordable form for recordation in the county where the property is located.

Please carry this sheet with you when you have your documents notarized. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

- All signatures and required written information need to be completed in **BLACK INK** only.

**Borrower's responsibility:**

- **Borrower(s) must sign their name(s) EXACTLY as printed below the signature line and within the margins of the body of the document.**

- If **Witness signatures** are required on your document, the witnesses can be the same for each borrower.

    - State of GA – Two witness signatures required for each borrower. One witness signature can be the Notary Acknowledgement signature.

- **Notary Responsibility on "Borrower Acknowledgment" page:**

- **County** and **State** must be completed by the Notary when notarizing the document.

- **The Notary must fill out the borrower's name, EXACTLY as it is printed on the signature line for the borrower, on the notary page next to the "personally appeared" line. (This does not apply in every state.)**

- **Date** (month, day and year) must be completed by the Notary when notarizing the document. **(Notary's Date must match date of Borrower's Signature.)**

- Notary Public's stamp and/or seal **MUST BE LEGIBLE.**

    **NOTE:** The Lender's Acknowledgement portion of the loan documents will be completed by CitiMortgage, Inc.and **SHOULD NOT** be notarized by the Notary Public

# EXHIBIT K

FHA Case No.: 1051637172703

## SUBORDINATE NOTE

**JUNE 23, 2014**  
[Date]

**ROSWELL**  
[City]

**GEORGIA**  
[State]

**7307 RICHLAND CT, ROSWELL, GEORGIA 30076**  
[Property Address]

### 1. PARTIES.

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or " Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of **FIFTY-SEVEN THOUSAND SIX HUNDRED FORTY-TWO DOLLARS AND 35 CENTS** (U.S. **$57,642.35**), to the order of Lender.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time.**

On ; **JUNE 1, 2044** ;or, if earlier, when the first of the following events occurs:

(i) The Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The property is not occupied by the purchaser as his or her principal residence.

**(B) Place.**

Payment shall be made at the **U.S. Department of HUD c/o Deval LLC, Westpoint 1, Suite 300, 1255 Corporate Dr, Irving, TX 75038** or any such other place as Lender may designate in writing by notice to Borrower.

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person

# EXHIBIT K

individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____          _____
Borrower                                 Borrower
CHARLES BOLTON A.K.A CHARLES S.BOLTON

_____          _____
Borrower                                 Borrower

_____          _____
Borrower                                 Borrower

# EXHIBIT K

This Document Prepared By:
**VIJENDRA PRAKASH JAIN**
**CITIMORTGAGE**
**14700 CITICORP. DR**
**HAGERSTOWN, MD 21742**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**ATTN: LMTS**
**P.O. BOX 27670**
**SANTA ANA, CA  92799-7670**

Tax/Parcel No. 12-2260-545-35-4

_____ [Space Above This Line for Recording Data] _____

**Investor Loan No.: 1051637172703**
**Loan No: 2001071257**

## SUBORDINATE SECURITY DEED
### GEORGIA STATE CODE: 560-11-8.14

THIS SUBORDINATE SECURITY DEED ("Security Instrument") is made on **JUNE 23, 2014**. The grantor is **CHARLES BOLTON A.K.A CHARLES S.BOLTON INDIVIDUAL** ("Borrower"), whose address is **7307 RICHLAND CT, ROSWELL, GEORGIA 30076. .** The beneficiary is the **Secretary of Housing and Urban Development**, whose address is **Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **FIFTY-SEVEN THOUSAND SIX HUNDRED FORTY-TWO DOLLARS AND 35 CENTS** Dollars (U.S. **$57,642.35**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **JUNE 1, 2044**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of **FULTON**, State of **GEORGIA**:

**SEE ATTACHED LEGAL DESCRIPTION ON EXHIBIT A**

# EXHIBIT K

Tax Parcel No. **12-2260-545-35-4**

which has the address of, **7307 RICHLAND CT, ROSWELL, GEORGIA 30076** (herein "Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1.   Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

    **2.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **3.   Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

    **4.   Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

    **5.   Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **6.   Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

# EXHIBIT K

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. **Acceleration: Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement of Borrower in this Security Instrument. The notice shall specify: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is given to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 7, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 7 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.**

# EXHIBIT K

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

_____
Borrower
**CHARLES BOLTON A.K.A CHARLES S.BOLTON**

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
1st Witness

_____
2nd Witness

_____
1st Witness – Printed Name

_____
2nd Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

State of **GEORGIA**
County of _____ ss.

This instrument was acknowledged before me this ____day of _____, _____, by **CHARLES BOLTON A.K.A CHARLES S.BOLTON**

Personally known _____ Produced Identification          Type: _____

(Seal)

_____
Signature of Notary

_____
(Name of Notary Typed, Stamped, or Printed)

# EXHIBIT K



## Borrower and Notary Checklist

LOAN NO:2001071257

Please carry this sheet with you when you have your documents notarized.
This checklist is being provided to ensure that your loss mitigation
documents are correctly executed. If any of the following steps are not
completed, or are completed incorrectly, the documents will be returned to
you for correction and/or completion.

- o  All signatures and requested written information completed in **BLACK INK**
  only.

- o  **Borrower(s) must sign their name(s) EXACTLY as printed below the
  signature line and within the margins of the body of the document.   The
  Notary must fill out the borrower's name, EXACTLY as it is printed on
  the signature line for the borrower, on the notary page next to the
  "personally appeared" line.**

- o  **Two Witness signatures** are required for each borrower in Connecticut,
  Georgia, Louisiana, and South Carolina.    The witnesses can be the
  same for each borrower. Note: The notary cannot sign as a witness.

- o  **County** and **State** completed on Borrower's Acknowledgment by the Notary
  for borrower(s).

- o  Notarization date written in by Notary Public when notarizing
  Borrower's Acknowledgment for each set of documents. **(Notary's Date
  must match date of Borrower's Signature.)**

- o  Notary Public's signature and title written in by Notary Public when
  notarizing Borrower's Acknowledgment for each set of documents.

- o  Notary Public's stamp and/or seal placed on Borrower's Acknowledgment
  when notarizing each set of documents **MUST BE LEGIBLE**.

- o  Commission Expiration Date of Notary Public written on Borrower's
  Acknowledgment for each set of documents, if required.

**NOTE**: The Lender's Acknowledgement portion of the loan documents will be
completed by CitiMortgage, Inc. and **SHOULD NOT** be notarized by the Notary
Public.

Updated 4/11/13

# EXHIBIT K

June 19, 2014

CHARLES BOLTON
7307 RICHLAND CT
ROSWELL, GA 30076-8841

Re: Property Address: 7307 RICHLAND CT,
                          ROSWELL, GA 30076-8841
   CitiMortgage Loan: 2001071257

Dear CitiMortgage Customer(s),

Based on careful review of the information you provided to us, you are approved for a Loan Modification.
The enclosed Modification Agreement reflects the proposed terms of your modified mortgage. Please read
the Modification Agreement carefully.

TIME IS OF THE ESSENCE.

TO ACCEPT THIS OFFER

To accept this offer, you must contact us at (877)245-2511 or in writing at the address provided below no
later than **July 3, 2014** to indicate your intent to accept this offer, or alternatively, return both copies of the
modification agreement signed and notarized by all obligated parties to us in the enclosed pre-paid
envelope by **July 3, 2014.** If you fail to notify us of your acceptance of the offer to modify your loan by
**July 3, 2014,** this offer has been revoked. There will be no extensions of time granted. Your request for
assistance will be closed without further notice or consideration.

To expedite the Modification, we may have ordered a title update to ensure that our lien position is
protected. CitiMortgage may choose not to proceed with the modification if other liens exist.

If indicated in your Modification Agreement, you must ensure that the two individuals who witnessed your
signature also sign the agreement (all borrowers, co-borrowers, and non-obligated persons listed on the
original recorded mortgage with a property address in a witness state must have 2 witness signatures per
individual). Please review the enclosed Borrower and Notary Checklist for witness signature
requirements.

Your modified and current terms are shown below. (Escrow for taxes & insurance may adjust periodically.)
The change in your principal and interest payment will be processed upon receipt of the fully executed
Modification Agreement.

| PAYMENT INFORMATION | NEW | CURRENT |
|---|---|---|
| 1. Principal Balance | 170,391.93 | 221,063.23 |
| 2. Interest Rate | 4.50000 | 4.50000 |
| 3. Principal & Interest Payment | 863.35 | 1,165.31 |
| 4. Taxes and/or Insurance Escrow | 321.06 | 290.98 |
| 5. Total Payment | 1,184.41 | 1,456.29 |
| 6. Loan Maturity Date | 06/01/44 | 07/01/41 |
| 7. Next Payment Due Date | 07/01/14 | |

**Additional Loan Modification Information and Legal Notices**
- This Loan Modification offer is contingent on your having provided accurate and complete
  information. We reserve the right to revoke this offer or terminate the Loan Modification following

# EXHIBIT K

your acceptance if we learn of information that would make you ineligible for the Loan Modification.

- Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Loan Modification Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

## MODIFICATION CONDITIONS

If any item below is checked, it is required to be returned with your executed documents.

**{X} Two sets of Modification documents must be signed, dated and notarized as indicated (Please follow instructions on the enclosed Borrower and Notary Checklist.)**

**{X} Certified Funds of $0.00 representing all or a portion of the first modification payment or borrower contribution, due no later than July 3, 2014 (See below for acceptable types of Certified Funds.)**

{ } Subordination Agreement(s) executed by subordinate lien holder(s)

{ } Executed Bankruptcy Rider

{ } Copy of Death Certificate

{ } Copy of Marriage Certificate

{ } Copy of Divorce Decree

{ } All applicable Borrowers must sign and return the Assumption Agreement, Release of Co-Obligor or Addition of Co-Obligor

{ } Copy of recorded Quit Claim Deed

As of 06/19/14, "unapplied" funds in the amount of **$3,571.47** are currently being held in your mortgage account. Your unapplied funds, along with any borrower contribution due with your Modification Agreement, will be disbursed as follows:

| | |
|---|---|
| Modification Fee | $0.00 |
| Escrow Advance Balance | $0.00 |
| Escrow Required | $963.18 |
| Accrued Interest | $1,927.86 |
| Principal | $680.43 |
| Other | $0.00 |
| Attorney Fees | $0.00 |
| Title Fees | $0.00 |
| Delinquency Expense | $0.00 |

The above amounts may differ at the time of booking the modification to adjust the terms of your loan as a result of the time period between the above date and the booking date.

Payments can be made as Certified Funds in the form of: Debit Card by phone, Western Union, Cashier's Check or Money Order made payable to CitiMortgage, Inc. Please be sure to include your loan number.

Western Union charges a fee for this service. For Western Union use:
Code City - CMI
Code State -MO
Reference number - your loan # 2001071257

# EXHIBIT K

If you have any questions regarding this letter or if you are concerned with how we have handled your account please call **Sesalee Woods at 1-855-843-2549 ext 0475290**, Monday - Thursday 7AM - 8PM (CST), Friday 7AM - 5:30PM (CST), Saturday 7AM - 4PM (CST), or via email at: **sesalee.m.woods@citi.com**. You may also contact me via mail at: CitiMortgage, Inc., Homeowner Support Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

In accordance with federal law, CitiMortgage has designated the following address where you can send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
Attn: Customer Research Team
P.O. Box 10002
Hagerstown, MD 21747-0002

Sincerely,

CitiMortgage, Inc.

Notices

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for the Homeowner Support Team.

If responding through e-mail, please do not include confidential information. E-mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The federal agency that administers compliance with this law concerning this creditor is the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Avenue - Suite 3450, Houston, TX 77010.

# EXHIBIT K

APN # 12 -2260-0545-035-4

When Recorded Return To:
CitiMortgage, Inc.
1000 Technology Drive, MS 420
O'Fallon, MO 63368-2240

Prepared by: Sampada Patil
Office: CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368

Loan # 2001071257

**Original Principal Amount:** $ 179,766.00
**Unpaid Principal Amount:** $ 221,063.23
**New Principal Amount:** $ 170,391.93
**New Money (Cap):** $ 833.76

## LOAN MODIFICATION AGREEMENT

### (PROVIDING FOR FIXED INTEREST RATE/CAPITALIZATION)

This Loan Modification Agreement ("Agreement"), made  February 20, 2014  , between  CHARLES
BOLTON A.K.A CHARLES S.BOLTON, INDIVIDUAL ("Borrower") residing at 7307 RICHLAND CT,
ROSWELL, GA  30076-8841,  and CitiMortgage, Inc. ("Lender")  If Applicable: follow with successor by
reason of merger with N/A and amends and supplements (1) the Mortgage, Deed of Trust, or Deed to
Secure Debt (the "Security Instrument") dated    11/03/03  and recorded on    11/10/03 , Document
number 2003-0388605 , Book number 36467, Page 26-37  in the Official Records of  FULTON Georgia,
and (2) the Note bearing the same date as, and secured by the Security Instrument , which covers the
real and personal property described in the Security Instrument and defined therein as the "Property",
located at 7307 RICHLAND CT, ROSWELL GA, 30076-8841 the real property described as being set forth
as follows:

### (SEE ATTACHED LEGAL DESCRIPTION)

1. As of 06/19/14, the amount payable under the Note and Security Instrument (the "Unpaid Principal
Balance") is U.S. $ 221,063.23. The Borrower acknowledges that interest has accrued but has not been
paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other
expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that
such interest, costs and expenses in the total amount of $ 833.76, have been added to the
indebtedness under the terms of the Note and Security Instrument and the loan re-amortized over 360
months. When payments resume on 07/01/14 , the New Unpaid Principal Balance will be $ 170,391.93
("New Unpaid Principal Balance").

2. The Borrower promises to pay the New Unpaid Principal Balance, plus Interest, to the order of
Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.500 % effective
06/01/14  (the "Interest Change Date"). The Borrower promises to make monthly payments of principal
and Interest of U.S. $ 863.35 (which does not include and amounts required for Insurance and/or Taxes)

# EXHIBIT K

**LEGAL DESCRIPTION:**

**THE FOLLOWING DESCRIBED PROPERTY LOCATED AT 7307 RICHLAND COURT, FULTON COUNTY, ROSWELL, GEORGIA 30076, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 545 OF THE 1ST DISTRICT, 2ND SECTION OF FULTON COUNTY, GEORGIA AND BEING LOT 28 OF CREEKSIDE AT MANSELL SUBDIVISION, BUILDING 8 UNIT IV, AS PER PLAT RECORDED IN PLAT BOOK 219, PAGES 24 THRU 25, FULTON COUNTY, GEORGIA RECORDS WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

**BEING THE SAME PROPERTY CONVEYED TO CHARLES B. BOLTON BY DEED FROM SAMPHUONG PHOK RECORDED 06/06/2002 IN DEED BOOK 32514 PAGE 646, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA.**

# EXHIBIT K

beginning on 07/01/14 and continuing thereafter on the same date of each succeeding month until principal and interest are paid in full.

If on 06/01/44 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay those amounts in full on the Maturity Date. All other terms stated in the Note remain the same.

3. If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

4. That, as of the Modification Effective date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

5. The Borrower also will comply with all the other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all the payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make the under Security Instrument; however, the following terms and provisions are forever canceled, null, and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and,

    (b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, or part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. It is mutually agreed that the Security Instrument shall constitute a first lien upon the premise and that neither the obligation evidencing the aforesaid indebtedness nor the Security Instrument shall in any way be prejudiced by this Agreement, but said obligation and Security Instrument and all the covenants and agreements thereof and the rights of the parties there under shall remain in full force and effect except as herein expressly modified.

8. Not withstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be

# EXHIBIT K

construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Agreement. I understand that I enter this Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

9. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected documentation , the terms of the original Note and Security Instrument shall continue in full force and effect, such terms will not be modified by this Agreement.

[ ]  MERS LOAN.  If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address of 1901 E Voorhees Street Suite C, Danville, IL  61834 or P.O. Box 2026, Flint, MI 48501-2026, and telephone number of (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

# EXHIBIT K

EXECUTED effective as of the day and year first above written.

In Witness Whereof, the Lender and I have executed this Agreement –

_____                    _____

CitiMortgage, Inc.                                  CHARLES  BOLTON

                                                    _____

                                                    A.K.A CHARLES S.BOLTON

_____                                _____

Date                                                Date

_____                    _____

Lender Witness 1 (Print)                            Borrower Witness 1 (Print)

_____                    _____

Lender Witness 1 (Sign)                             Borrower Witness 1 (Sign)

_____                    _____

Lender Witness 2 (Print)                            Borrower Witness 2 (Print)

_____                    _____

Lender Witness 2 (Sign)                             Borrower Witness 2 (Sign)

# EXHIBIT K

_____[Space Below This Line For Acknowledgments] _____

INDIVIDUAL ACKNOWLEDGEMENT

State of Georgia
County of FULTON

**On this** _____day of _____, in the year _____, before me, the undersigned, personally appeared, CHARLES  BOLTON A.K.A CHARLES S.BOLTON personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by HIS/HER/THEIR signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public_____

My Commission Expires: _____

# EXHIBIT K

STATE OF       Georgia
COUNTY OF     FULTON

EFFECTIVE DATE:     06/19/14
BORROWERS:          CHARLES  BOLTON

PROPERTY:           7307 RICHLAND CT
                    ROSWELL,  GA  30076-8841

LOAN NUMBER:        2001071257

## COMPLIANCE AGREEMENT

The undersigned Borrower(s), in consideration of the loan modification of the above-described loan by
CitiMortgage, Inc. and/or Assigns (Lender) in the amount of $ 170,391.93,as evidence by a Promissory Note Dated
11/03/03 and secured by a Deed of Trust or Mortgage of even date against real property commonly known as: 7307
RICHLAND CT, ROSWELL GA, 30076-8841 agrees to fully cooperate with any reasonable requests made by the
Lender, or its agent, (1) to complete such loan modifications; or (2) to enable Lender to sell, convey, seek a guaranty
or obtain insurance for, or market said loan to any purchaser, including but not limited to, any investor or institution,
the Federal National Mortgage Association, The Government Nation Mortgage Association, the Federal Home Loan
Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or
any municipal bonding authority, or to ensure enforceability of loan if kept in Lender's own portfolio. These
requests may include, but are not limited to, all changes, corrections, re-executions or modifications of any
documents related to such loan, or execution of any additional documents as may be required.

The undersigned will comply with all such requests within thirty (30) days from the date they are made by the
Lender or it's agent. If Borrower(s) fails to meet its obligations hereunder, Borrower(s) agrees to be liable for and to
pay or Reimburse Lender for all costs including, but not limited to, actual expenses, legal fees, court costs, and
marketing Losses incurred or sustained by Lender to enforce its rights hereunder and caused by such failure.

**DATED this** _____ **day of** _____ , 20__.


_____
**Borrower - CHARLES  BOLTON**
    **A.K.A CHARLES S.BOLTON**

The foregoing Compliance Agreement was acknowledged before me this _____ day of _____, 20__
by CHARLES  BOLTON A.K.A CHARLES S.BOLTON      as Borrower(s)

WITNESS my hand and official seal.

My commission Expires: _____


_____
Notary Public

# EXHIBIT K

NAME AFFIDAVIT

DATE: 06/19/14

SERVICER: **CitiMortgage, Inc.**

BORROWER'S: CHARLES BOLTON A.K.A CHARLES S.BOLTON

PROPERTY ADDRESS   7307 RICHLAND CT
                   ROSWELL, GA 30076-8841
LOAN NUMBER: 2001071257

The undersigned, CHARLES BOLTON A.K.A CHARLES S.BOLTON
certifies that he/she is one and the same person as:

_____
CHARLES BOLTON A.K.A CHARLES S.BOLTON
as signed on any of the documents executed in connection with this real estate transaction.

_____
Borrower - CHARLES BOLTON

_____
Borrower - A.K.A CHARLES S.BOLTON

STATE OF GEORGIA
COUNTY OF FULTON

Sworn to before me this _____ day of _____ , _____.

_____
Notary Public

My Commission Expires: _____

# EXHIBIT K

## NOTICE TO BORROWER
### *NOT IN*
### SPECIAL FLOOD HAZARD AREA

Borrower:           CHARLES BOLTON
Loan Number:        2001071257

Property Location:  7307 RICHLAND CT
                    ROSWELL, GA 30076-8841

This Notice Date is as of: June 19, 2014

Attached is the completed Standard Flood Hazard Determination Form that indicates that the improved real estate or mobile home securing you loan is not located in the area designated by the Director of the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at anytime during the term of your loan the improved real estate or mobile home securing your loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by the Director of FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in amount less than the amount we advise you is necessary, we shall purchase such flood insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of the Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), herby understand and agree to all the above.

_____
Borrower/Applicant                Date

# EXHIBIT K

| FEDERAL EMERGENCY MANAGEMENT AGENCY<br>STANDARD FLOOD HAZARD DETERMINATION | | O.M.B. No. 3067-0264<br>Expires October 31, 2005 |
|---|---|---|

**SECTION I LOAN INFORMATION**

| 1. LENDER NAME AND ADDRESS<br><br>CitiMortgage, Inc.<br>1000 Technology Drive<br>O' Fallon, MO 63304 | 2. COLLATERAL (Building/Mobile Home/Personal Property) PROPERTY ADDRESS<br>(Legal Description may be attached)<br><br>7307 RICHLAND CT<br>ROSWELL, GA 30076-8841 |
|---|---|

| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER<br>002001071257<br>Charles Bolton | 5. AMOUNT OF FLOOD INSURANCE REQUIRED<br>$ |
|---|---|---|

**SECTION II**

**A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION**

| 1. NFIP Community Name | 2. County(ies) | 3. State | 4. NFIP Community Number |
|---|---|---|---|
| ROSWELL, CITY OF | FULTON | GA | 130088 |

**B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING/MOBILE HOME**

| 1. NFIP Map Number or Community Panel Number<br>(Community name, if not the same as "A") | 2. NFIP Map Panel Effective/<br>Revised Date | 3. LOMA/LOMR | | 4. Flood Zone | 5. No NFIP<br>Map |
|---|---|---|---|---|---|
| 130088 0062 E | 06-22-1998 | Yes | Date | X | |

**C. FEDERAL FLOOD INSURANCE AVAILABILITY (Check all that apply)**

1. ☒ Federal Flood insurance is available *(community participates in NFIP)*.    ☒ Regular Program    ☐ Emergency Program of NFIP
2. ☐ Federal Flood Insurance is not available because community is not participating in the NFIP.
3. ☐ Building/Mobile Home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area (OPA). Federal Flood insurance may not be available.
     CBRA/OPA designation date: _____

**D. DETERMINATION**

IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA
(ZONES CONTAINING THE LETTERS "A" OR "V")?    ☐ YES    ☒ NO

If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood insurance is not required by the Flood Disaster Protection Act of 1973.

**E. COMMENTS** *(Optional)*:

Transferable: Yes
Life of Loan: Yes
Certification Number: 20030715SE3069

This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building/mobile home on the NFIP map.

**F. PREPARER'S INFORMATION**

| NAME, ADDRESS, TELEPHONE NUMBER (if other than Lender)<br><br>CitiMortgage, Inc. Flood Services<br>1000 Technology Drive<br>MS 226<br>St Charles, MO 63304<br>(636) 261-7217 | DATE OF DETERMINATION<br><br>July 15, 2003 |
|---|---|

25178 - 02/13/2003 [002001071257]
LASER PRO. Reg. U.S. Pat. & T.M.Off., Version CITI 2.3.0.22 10/06/2003 (c) 2003 Concentrex Incorporated, All Rights Reserved.

FEMA Form 81-93. Oct. 02

# EXHIBIT K



## Subordinate Documents Checklist

Enclosed are two sets of Partial Claim documents that will need to be properly completed, notarized and returned using the enclosed return envelope. You may keep one set for your records. The other set will need to be returned no later than the date required on the enclosed documents.

Please note that First American Mortgage Source prepared the Partial Claim documents pursuant to CitiMortgage's instructions, merely for the purpose of ensuring that the documents are executed properly and are in recordable form for recordation in the county where the property is located.

Please carry this sheet with you when you have your documents notarized. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

- All signatures and required written information need to be completed in **BLACK INK** only.

**Borrower's responsibility:**

- **Borrower(s) must sign their name(s) EXACTLY as printed below the signature line and within the margins of the body of the document.**

- If **Witness signatures** are required on your document, the witnesses can be the same for each borrower.

    - State of GA – Two witness signatures required for each borrower. One witness signature can be the Notary Acknowledgement signature.

- **Notary Responsibility on "Borrower Acknowledgment" page:**

- **County** and **State** must be completed by the Notary when notarizing the document.

- **The Notary must fill out the borrower's name, EXACTLY as it is printed on the signature line for the borrower, on the notary page next to the "personally appeared" line. (This does not apply in every state.)**

- **Date** (month, day and year) must be completed by the Notary when notarizing the document. **(Notary's Date must match date of Borrower's Signature.)**

- Notary Public's stamp and/or seal **MUST BE LEGIBLE.**

    **NOTE:** The Lender's Acknowledgement portion of the loan documents will be completed by CitiMortgage, Inc.and **SHOULD NOT** be notarized by the Notary Public

# EXHIBIT K

**FHA Case No.: 1051637172703**

## SUBORDINATE NOTE

| **JUNE 23, 2014** | **ROSWELL** | **GEORGIA** |
|---|---|---|
| [Date] | [City] | [State] |

**7307 RICHLAND CT, ROSWELL, GEORGIA 30076**
[Property Address]

### 1. PARTIES.

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or " Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of **FIFTY-SEVEN THOUSAND SIX HUNDRED FORTY-TWO DOLLARS AND 35 CENTS** (U.S. **$57,642.35**), to the order of Lender.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time.

On ; JUNE 1, 2044 ;or, if earlier, when the first of the following events occurs:

    (i) The Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

    (ii) The maturity date of the primary Note has been accelerated, or

    (iii) The Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

    (iv) The property is not occupied by the purchaser as his or her principal residence.

(B) Place.

Payment shall be made at the **U.S. Department of HUD c/o Deval LLC, Westpoint 1, Suite 300, 1255 Corporate Dr, Irving, TX 75038** or any such other place as Lender may designate in writing by notice to Borrower.

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person

# EXHIBIT K

individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____
Borrower
**CHARLES BOLTON A.K.A CHARLES S.BOLTON**

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower



# EXHIBIT K

This Document Prepared By:
**VIJENDRA PRAKASH JAIN**
**CITIMORTGAGE**
**14700 CITICORP. DR**
**HAGERSTOWN, MD 21742**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**ATTN: LMTS**
**P.O. BOX 27670**
**SANTA ANA, CA 92799-7670**

Tax/Parcel No. 12-2260-545-35-4

_____ [Space Above This Line for Recording Data] _____

**Investor Loan No.: 1051637172703**
**Loan No: 2001071257**

## SUBORDINATE SECURITY DEED
### GEORGIA STATE CODE: 560-11-8.14

THIS SUBORDINATE SECURITY DEED ("Security Instrument") is made on **JUNE 23, 2014**. The grantor is **CHARLES BOLTON A.K.A CHARLES S.BOLTON INDIVIDUAL** ("Borrower"), whose address is **7307 RICHLAND CT, ROSWELL, GEORGIA 30076.** . The beneficiary is the **Secretary of Housing and Urban Development**, whose address is **Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **FIFTY-SEVEN THOUSAND SIX HUNDRED FORTY-TWO DOLLARS AND 35 CENTS** Dollars (U.S. **$57,642.35**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **JUNE 1, 2044**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of **FULTON**, State of **GEORGIA**:

### SEE ATTACHED LEGAL DESCRIPTION ON EXHIBIT A

# EXHIBIT K

Tax Parcel No. 12-2260-545-35-4

which has the address of, **7307 RICHLAND CT, ROSWELL, GEORGIA 30076** (herein "Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing, is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

# EXHIBIT K

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7.   Acceleration: Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement of Borrower in this Security Instrument. The notice shall specify: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is given to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 7, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 7 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided by the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

# EXHIBIT K

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

_____          _____
Borrower                                 Borrower
**CHARLES BOLTON A.K.A CHARLES S.BOLTON**

_____          _____
Borrower                                 Borrower

_____          _____
Borrower                                 Borrower

_____          _____
1st Witness                              2nd Witness

_____          _____
1st Witness – Printed Name               2nd Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

State of **GEORGIA**
County of _____ ss.

This instrument was acknowledged before me this ____day of _____, _____, by **CHARLES BOLTON A.K.A CHARLES S.BOLTON**

Personally known _____ Produced Identification          Type: _____

  (Seal)

_____
                                                         Signature of Notary

_____
                                       (Name of Notary Typed, Stamped, or Printed)

# EXHIBIT K

**EXHIBIT A**

**BORROWER: CHARLES BOLTON**

**LOAN NUMBER: 2001071257**

**LEGAL DESCRIPTION:**

**THE FOLLOWING DESCRIBED PROPERTY LOCATED AT 7307 RICHLAND COURT, FULTON COUNTY, ROSWELL, GEORGIA 30076, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 545 OF THE 1ST DISTRICT, 2ND SECTION OF FULTON COUNTY, GEORGIA AND BEING LOT 28 OF CREEKSIDE AT MANSELL SUBDIVISION, BUILDING 8 UNIT IV, AS PER PLAT RECORDED IN PLAT BOOK 219, PAGES 24 THRU 25, FULTON COUNTY, GEORGIA RECORDS WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

**BEING THE SAME PROPERTY CONVEYED TO CHARLES B. BOLTON BY DEED FROM SAMPHUONG PHOK RECORDED 06/06/2002 IN DEED BOOK 32514 PAGE 646, IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA.**

**ALSO KNOWN AS: 7307 RICHLAND CT, ROSWELL, GA 30076-8841**

# EXHIBIT K


citi

June 19, 2014

CHARLES  BOLTON A.K.A CHARLES S.BOLTON

7307 RICHLAND CT
ROSWELL, GA 30076-8841

RE:    Loan Number: 2001071257
       Property Address: 7307 RICHLAND CT
                         ROSWELL, GA, 30076-8841

Dear Mortgagor,

CitiMortgage, Inc. (CitiMortgage) has reviewed your request for a partial claim. The enclosed
Partial Claim Agreement sets forth the terms under which CitiMortgage will accept a schedule of payments.
These payments must continue to be made each month.

Please read the contract thoroughly so you understand your responsibilities under this agreement,
and sign and return the Partial Claim Agreement as follows:

1) Return original agreement to:
       CitiMortgage, Inc., 1000 Technology Drive, MS 420, O'Fallon, MO 63368

2) All payments must be in **certified funds** while your account is delinquent.
       a. Via Western Union Quick Collect. Western Union charges a fee for this service.
       b. Provide the operator with the city code of CMI, state code of MO, and your loan number.
       c. Obtain the Money Transfer Control Number (MTCN) as confirmation of the transaction.

3) Your contribution and future payments may be sent to: CitiMortgage, Inc., Attention Exception
Payments 1156-7, 4740 121st Street, Urbandale, IA 50323-2402.

## TIME IS OF THE ESSENCE.

### TO ACCEPT THIS OFFER

If you have notified us of your intent to accept the offer by 07/03/2014, which is 14 calendar days from the date of
this letter,  or, if you have not notified us and a foreclosure sale has not occurred, you must return this partial claim
document on or before 07/03/2014 . If you fail to return this partial claim document by 07/03/2014 and / or we do
not receive the continuing monthly payment by the last day of the month in which it is due, this offer will be
revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

It is important that you return the signed contract and your contribution by  07/03/2014 or this Partial Claim
Agreement
will be considered null and void and we will resume collection and/or foreclosure activity, if applicable.

If you have questions regarding this letter or need to make other arrangements for returning the Partial Claim
Agreement and the contribution, please call Sesalee Woods at (877)245-2511, EXT. 0475290, Monday - Thursday
7:00 a.m. - 8:00 p.m. CT, Friday 7:00 a.m. - 5:30 p.m. CT, and Saturday 7:00 a.m. - 4:00 p.m. CT , or via email at:
sesalee.m.woods@citi.com. You may also contact me via mail at:  CitiMortgage, Inc., Homeownership Support

# EXHIBIT K

Team, 1000 Technology Drive, Mail Station 420, O'Fallon, MO 63368.

In accordance with federal law, CitiMortgage has designated the following address where you can send a written request for information, a written notice of error, or a qualified written request:

CitiMortgage, Inc.
Attn: Customer Research Team
P.O. Box 10002
Hagerstown, MD 21747-0002

Sincerely,
Sesalee Woods
Homeowner Support Specialist
CitiMortgage, Inc.

Cc: File

## NOTICES

TTY Services available: Dial 711 from the United States; Dial 866-280-2050 from Puerto Rico.

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for the Homeowner Support Specialist unit.

If responding through e-mail please do not include confidential information.  E-Mail communication is randomly monitored to ensure quality service.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

The purpose of this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

**To the extent your obligation has been discharged or is subject to an automatic stay of bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.**

Information for Massachusetts Residents:

**NOTICE OF IMPORTANT RIGHTS**
**YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

# EXHIBIT K

## STIPULATED PARTIAL CLAIM AGREEMENT

THIS **STIPULATED PARTIAL CLAIM** AGREEMENT made as of the June 19, 2014, by and between CitiMortgage, Inc. ("CitiMortgage"), a corporation with a principal place of business at 1000 Technology Drive, MS 420, O'Fallon MO 63368, and CHARLES BOLTON, whose mailing address is 7307 RICHLAND CT, ROSWELL, GA 30076-8841 and collectively known as "Borrower".

Recitals:

A. CitiMortgage is the owner and holder or servicing agent of a certain Note and Deed of Trust/Mortgage made and executed or assumed by the Borrower,

B. The Borrower has failed to make regular monthly payments in accordance with the terms of the Note and Deed of Trust/Mortgage, and therefore, the loan is in default, and CitiMortgage has exercised its rights to institute collection (and/or foreclosure, if applicable); and

C. The Borrower has requested that CitiMortgage enter into this Partial Claim Agreement to place its collection activities and/or foreclosure action, if applicable, on hold. CitiMortgage wishes to assist Borrower, but does not wish to discontinue collection activities and/or foreclosure action, if applicable, until the loan is brought current.

Agreement:

1) The total amount needed for the second step of the HAMP Program or the final step for the stand alone HAMP Partial Claim, which includes the MARCH, payment, is as follows:

| | | |
|---|---|---|
| 4 payments at $ 1685.98 | | $ 6,743.92 |
| (From 12/01/13-03/01/14) | | |
| Late Charges: | | $ 0.00 |
| Other: prin reduction | $ 49,471.76 | |
| Other: escrow shortage | $ 1,312.31 | |
| Foreclosure Fees: | | $ 114.36 |
| Total Arrears Due: | | $ 57,642.35 |
| Partial Claim Amount from HUD: | | $ 57,642.35 |
| **Borrower contribution:** | | **$ 0.00** |

**Borrower contribution and signed Partial Claim Agreement are due back to our office on or before07/03/2014.**
2) Beginning on 04/01/2014, Borrower shall resume making regularly scheduled monthly payments of $1190.49. Regularly scheduled monthly payments must continue to be made each month. Failure to make regularly scheduled monthly payments will result in program failure. In addition to their regularly scheduled monthly payments, Borrower shall pay the above arrears as follows:

$ 1,190.49 due 04/01/2014 - PAID
$ 1,190.49 due 05/01/2014 - PAID
$ 1190.49 due 06/01/2014 - PAID
$ 1,184.41 due 07/01/2014 - First modified payment due

# EXHIBIT K

3) By entering into this Partial Claim Agreement, CitiMortgage is neither modifying, nor waiving any rights under the Note and Deed of Trust/Mortgage, which shall continue in full force and effect. CitiMortgage is only agreeing to forbear from further collection activities (and/or foreclosure action, if applicable), on the condition that Borrower makes all regularly scheduled payments due under the Note and Deed of Trust/Mortgage and arrears payments under this Partial Claim Agreement, including the borrower contribution. In the event that Borrower does not make all payments under this Partial Claim Agreement, CitiMortgage will proceed with collection activities (and/or foreclosure action, if applicable), without further notice, except as prohibited by state law.

4) All money paid to CitiMortgage during the term of this Partial Claim Agreement is due and owing and not refundable.

5) Borrower must sign a subordinate note and deed of trust, payable to the Secretary of HUD, agreeing to repay the Partial Claim amount submitted. The Partial Claim payment will be due and payable to HUD when the loan owned, held, or serviced by CitiMortgage matures, is accelerated or when the property is sold.

6) Should HUD deem this loan ineligible for the Partial Claim Program, Borrower is responsible for and must make arrangements to cure the remaining delinquency with CitiMortgage.

7) This payment Partial Claim Agreement is subject to change if the regular payment amount changes. If you have questions regarding your new payment amount please contact CitiMortgage. The monthly payment provided for in this schedule may increase or decrease due to the following conditions:

    (1) Variable Interest Rate or Graduated Payment loans;
    (2) Escrow impound changes or advances;
    (3) Costs, fees and reimbursements provided for under the loan documents that
    may be assessed to the account.

8) CitiMortgage will not discontinue the pending collection activities (and/or foreclosure action, if applicable), until Borrower's account is current.

9) If you file for bankruptcy at any time during the term of this Partial Claim Agreement, please notify CitiMortgage immediately as it may affect the terms of this stipulated Partial Claim Agreement.

10) All money paid to CitiMortgage during the term of this Partial Claim Agreement must be in *certified funds*.

11) All payments under this Partial Claim Agreement are due on the due dates. There is no grace period under the plan for any payments.

12) Borrower certifies and represents to Lender and agrees that Borrower's obligation to repay the debt has not been discharged under Chapter 7 Bankruptcy or is not currently subject to an Automatic Stay issued by a United States Bankruptcy Court. If Borrower files for bankruptcy at any time during term of this Partial Claim Agreement, Borrower will notify CitiMortgage immediately as it may affect the terms of this Partial Claim Agreement.

Loan No: 2001071257
**CitiMortgage, Inc.**

_____       _____
CitiMortgage Loss Mitigation                 Date

*I/we agree to all terms as set forth in this* Partial Claim *Agreement:*

# EXHIBIT K

_____          _____
Borrower: CHARLES  BOLTON A.K.A CHARLES S.BOLTON          Date

_

# EXHIBIT L

Print Close

# CITIMORTGAGE EXECUTIVE RESPONSE UNIT RE 7307 Richland Court Roswell, GA 30076

From: **Woods, Sesalee M** (sesalee.m.woods@citi.com)

Sent: Tue 7/08/14 4:00 PM

To: 'CBOL5095@HOTMAIL.COM' (CBOL5095@HOTMAIL.COM)

Cc: CC Client 2 (CC_Client_2@imcnam.ssmb.com)

Dear Mr. Charles Bolton,

Thank you for speaking with me today!

Per our discussion, here is the email message that reiterates the specifics of your concerns regarding your official modification agreement documents. I have conferred with my manager David Nichols and relayed your contact number to him for his use later today:

- You initially expressed your apprehension via email on July 7, 2014 regarding the dates specified in the agreement and requested that new documents be created and dispatched to reflect a more current timeframe. I addressed this concern and informed you that I'd inquired internally regarding your receipt of new documents and further advised you this may not be a possibility. The documents cite that the agreement be returned by July 3, 2014, however I did verify within your file as well as state to you that the documents weren't received from your Lender to Citimortgage for dispatch until July 2, 2014. Mr. Bolton I advised you that this was not a delay caused by yourself but by the volume of loans your Lender has approved for assistance and that the validity of the offer has not been affected by this occurrence. I further informed you that the documents may be returned to Citimortgage signed, dated, and notarized within the next seven days.

- Mr. Bolton you advised me your concern regarding the syntax and/or grammar used within the official modification agreement, specifying sections 1 and 5 as bearing errors. I acknowledged what you cited but advised there was no way to disprove what the documents present verbally, as the agreement was drafted by your Lender. I further advised you that the objective of this process is to prevent foreclosure for your property as well as to assist with your retention of your home without delinquency. I stated that it would behoove you to comply with what was being offered, however, I continued by stating that Citimortgage cannot coerce you to proceed with the process.

# EXHIBIT L

- You requested to speak with my manager as well as to receive transcripts of all discussions that have occurred with myself as your Specialist after having verified that the calls are recorded. I confirmed that the calls may be recorded for quality assurance purposes and asked if you minded holding on the line while I sought my manager and you agreed. My manager was not at his desk during this time so I sought the assistance of my supervisor, who was in a meeting. I'd received response that Citimortgage would not be able to accommodate your request of redrafted documents as they are per your Lender's decision. I further informed you that to obtain transcripts of all conversations you've had with me require a court order (subpoena). Mr. Bolton, you requested the names of both my manager and supervisor, which I provided. I advised that I would request that my manager contact you today and verified the number at which you can be reached. This email message and my dispatch of it to you was your final request for this discussion in that you be provided with a reiteration of what occurred today.

Mr. Bolton I've conferred with my manager, who will contact you later today, regarding the dates specified in your official assistance agreement, It has been explained to me that although the dates have passed and yet the terms offered are still valid, however, to change or alter any of the dates would cause the calculation of the terms to shift or change. Plainly speaking, the dates that are specified within the agreement coincide with the underwriting decision the Lender made when the loan was approved for its assistance option. The calculations of the terms stem from the underwriting of the loan and the date or dates the approval was granted. If the dates cited for documents to be returned is changed after the official draft, it could cause a change of the interest rate, principal balance, and contractual payment the offer presents to the borrower. I hope that this offers you more assurance regarding your loan's approval and that this assuages any apprehension you may have garnered from this process. I thank you again for all of your patience, thoroughness, and cooperation throughout this endeavor.

Thank you for working with Citimortgage.


***Please provide a brief response to insure your receipt of this message. Thank you***

Remember, during any point of your treatment review you can reach me at (877) 245-2511, EXT. 0475290, Monday - Friday 7:00 a.m. – 5:00 p.m. (CT), or email me at sesalee.m.woods@citi.com2. I look forward to working with you.

Sincerely,
Sesalee Woods
Executive Response Specialist
(877) 245-2511, Extension 0475290 (use leading zero)
CitiMortgage, Inc.
1000 Technology Drive
Mail Station 705
O'Fallon, MO 63368

# EXHIBIT L

ABOUT THIS MESSAGE

Calls are randomly monitored and recorded to ensure quality service.
General hours are Monday - Friday, 7:00 a.m. - 5:00 p.m. (CT). If not able to contact your
Executive Response Specialist during their specific work hours detailed above, you can call
to speak to another Executive Response Specialist during general hours. They will either
be able to help you directly or can set up an appointment with your Executive Response
Specialist. If contacting your Executive Response Specialist through e-mail please do not
include confidential information.  E-Mail communication is randomly monitored to ensure
quality service.


CitiMortgage, Inc. is a debt collector and any information obtained will be used for that
purpose. Please Note: In the event you are subject to an Automatic Stay issued by a United
States Bankruptcy Court or the referenced debt has been discharged in Bankruptcy, this
communication is not intended to collect a debt.

To opt out of email communications with your Executive Response Specialist, please send
an email to OptOutEmail@citi.com including (1) your name, (2) your property address and
(3) your email address.  Please allow 48 business hours for processing of your request.

# EXHIBIT M

**From:** Charles Bolton
7307 Richland Court
Roswell, GA 30076

**To:** Michael Corbatt, Chief Executive Officer of Citibank
399 Park Avenue
New York, NY 10022

**To:** Jane Fraser, Chief Executive Officer of CitiMortgage
399 Park Avenue
New York, NY 10022

**To:** Sesalee M. Woods, Homeownership Support Team
1000 Technology Drive
O'Fallon, Mo 63368

**To:** Jacob Brown, Operations Support Assistant
1000 Technology Drive
O'Fallon, Mo 63368

I am writing to decline the modification agreement that was approved February 20th 2014. I am declining this offer due to the following reasons:

1. The agreement demands signature from a mysterious person "CHARLES S. BOLTON". On July 9th, 2014, two days after receiving the modification agreement through UPS *(tracking number 1Z 51E 906 01 0282 7637)*, I made requests to both Sesalee Woods and her supervisor Jacob Brown that this mysterious name be removed from the modification agreement. Since then, both have stated countless times that the mysterious name cannot be removed and that I must sign and return the defective agreement in order to accept the offer approved Feb 20th, 2014.
2. The agreement demands that I sign, notarize and return the agreement by July 3rd, 2014. This is also defective since the documents did not reach my possession until July 7th, 2014.
3. The agreement contains misspellings and incoherent sentences in sections one and five that represent a defective legal document.

As of July 11th, 2014 no other modification options or offers have been presented. I welcome any new modification options, offers and/or corrections to the existing modification agreement. I am submitting in addition to this letter of decline, a new workable solutions package with supporting documentation. Please advise ASAP if any other documents are needed to expediently complete the review process.

**This Legal Notice to Principal is a Legal Notice to Agent; and this Legal Notice to Agent is a Legal Notice to Principal.**

Sincerely Yours,
I Am: *Charles B. Bolton*
All Rights Reserved.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DISTRICT

Mustafa Shakur Khan El,
   Plaintiff,

v.

Michael L. Corbat (C.E.O CitiGroup, Inc.),
CitiGroup, Inc.,
Jane Fraser (C.E.O CitiMortgage, Inc.),
CitiMortgage, Inc.,
   Defendants.

CIVIL ACTION
FILE NO.

## CERTIFICATE OF SERVICE
## REGARDING PLAINTIFF'S SUMMONS AND COMPLAINT ON
## MORTGAGE FRAUD

This is to certify that I have this day served *Plaintiff's Summons and Complaint on Mortgage Fraud* by mailing an overnight copy of the same with adequate postage paid, in a properly addressed envelope via Federal Express to:

Michael Corbat, C.E.O. of CitiGroup, Inc.
399 Park Avenue
New York, NY 10022
Tracking Number: 8061 7537 8350

Jane Fraser, C.E.O. of CitiMortgage, Inc.
399 Park Avenue
New York, NY 10022
Tracking Number: 8061 7537 8349

CitiGroup, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801
Tracking Number: 8066 6449 6987

CitiMortgage, Inc.
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801
Tracking Number: 8066 6449 7078

This 3rd day of November, 2014.

I Am: _Mustafa Shakur Khan El_ .

Mustafa Shakur Khan El, Divine Being,
In Propria Persona, Sui Juris, Sui Heredes
Ex Relatione: CHARLES BENARD BOLTON
Not a Corporate Person or Entity, Misrepresented by
Fraudulent Construct of ALL CAPITAL LETTERS
All Rights Reserved.
[c/o 7307 Richland Court]
[Roswell Territory]
[Georgia Republic]
[Zip Exempt]
Non-Domestic / Non-Subject / Non-Resident /
Non-Corporate